# Illinois Official Reports

## Appellate Court

*DeMeester's Flower Shop & Greenhouse, Inc. v. Florists' Mutual Insurance Co.*,
2017 IL App (2d) 161001

| | |
|---|---|
| Appellate Court Caption | DEMEESTER'S FLOWER SHOP AND GREENHOUSE, INC., Plaintiff-Appellant, v. FLORISTS' MUTUAL INSURANCE COMPANY, INC., and JOHN CALLAWAY, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-16-1001 |
| Filed | October 26, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Stephenson County, No. 15-L-11; the Hon. David L. Jeffrey, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Robert M. Fagan, of Law Offices of Robert M. Fagan, Ltd., of Freeport, for appellant.<br><br>Thomas B. Keegan, of Senak Keegan Gelason Smith & Michaud, Ltd., of Chicago, for appellees. |
| Panel | JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.<br>Justices McLaren and Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1    In this insurance-coverage action, the plaintiff, DeMeester's Flower Shop and Greenhouse, Inc., contends that the defendant Florists' Mutual Insurance Company, Inc. (Florists), has a duty to indemnify it for the amounts it spent to replace 26 lawns that were damaged due to the negligence of one of its employees. The circuit court of Stephenson County dismissed the plaintiff's action pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2012)). The plaintiff appeals from that order. We affirm.

¶ 2                                    BACKGROUND

¶ 3    The basic facts are not in dispute. The plaintiff operates a flower shop and lawn care business in Freeport. On May 10 and 13, 2013, one of its employees negligently mixed glyphosate (an herbicide, commonly known as Roundup) instead of Eliminate (a selective broadleaf herbicide) in a lawn sprayer. As a result, the plaintiff's employee severely damaged 26 of the plaintiff's customers' lawns. The plaintiff incurred substantial expense for the restoration of the lawns.

¶ 4    At the time of the incident, the plaintiff was insured pursuant to a policy with Florists. That policy included a limited pesticide- or herbicide-applicator coverage endorsement. After Florists denied coverage, the plaintiff filed a three-count complaint. Count I sought a declaration that the coverage provided by the herbicide endorsement included the mistaken herbicide application and that the policy exclusions that Florists relied on to deny coverage did not apply. The plaintiff relied on the following provisions of the Illinois Pesticide Act (415 ILCS 60/1 *et seq.* (West 2012)):

> "A licensed commercial applicator [of pesticide] must provide to the Director [of Agriculture] at the time of original licensing and license renewal evidence of financial responsibility protecting persons who may suffer personal injury or property damage or both as a result of the pesticide operation of the applicant in either of the following manners:
>
> ***
>
> B. Evidence of responsibility may be provided in the form of a certificate of liability insurance providing coverage for each licensed commercial applicator or licensed entity in the amount of not less than $50,000 per person, $100,000 per occurrence bodily injury liability coverage, with an annual aggregate of not less than $500,000, and $50,000 per occurrence property damage liability, with an annual aggregate of not less than $50,000; or in lieu thereof, a combined single limit of not less than $100,000 bodily injury and property damage liability combined, with an annual aggregate of not less than $50,000." 415 ILCS 60/10(3) (West 2012).

Count II asserted a claim for vicarious liability, and count III alleged that Florists' agent, defendant John Callaway, had negligently represented to the plaintiff what was covered in the insurance policy.

¶ 5    The defendants filed a motion to dismiss the plaintiff's complaint, pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2012)), arguing that the plaintiff's claim was barred under the property-damage exclusions contained in the policy. That section of the policy stated:

"Exclusions

This insurance does not apply to:

* * *

j. Damage to Property

" 'Property Damage' " to

* * *

(5)That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or

(6)That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."

The defendants also asserted that the herbicide endorsement did not override those policy exclusions.

¶ 6    On November 1, 2016, the trial court dismissed the plaintiff's entire complaint with prejudice. As to count I, the trial court found that the property-damage exclusions in the policy barred coverage because the policy was not meant to pay the plaintiff for negligent work that it performed. The trial court also rejected the plaintiff's argument that the Pesticide Act mandated coverage for property damage. The trial court explained that the plaintiff's interpretation of the Pesticide Act would "carve out a method whereby contractors who performed work negligently would be compensated for their own negligent work." The trial court further found that the mandatory-financial-responsibility provision in the Pesticide Act was "geared to compensating the aggrieved landowners, not the business which negligently caused the harm." The trial court dismissed count II on the basis that vicarious liability is not itself a cause of action. The trial court dismissed count III because it found that a claim for negligent misrepresentation was barred by the *Moorman* doctrine. Following the trial court's ruling, the plaintiff filed a timely notice of appeal.

¶ 7                                    ANALYSIS

¶ 8    On appeal, the plaintiff challenges the trial court's ruling only as to count I of its complaint. The plaintiff contends that the trial court erred in determining that the property-damage exclusions in the policy applied because they conflicted with the Pesticide Act. The plaintiff insists that the Pesticide Act reflects Illinois public policy mandating coverage for parties that are required to purchase coverage, namely itself.

¶ 9    A motion to dismiss brought under section 2-615 tests the legal sufficiency of the complaint. On review, the inquiry is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff and taking all well-pleaded facts and all reasonable inferences that may be drawn from those facts as true, are sufficient to establish a cause of action upon which relief may be granted. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305 (2008). Because Illinois is a fact-pleading jurisdiction, a plaintiff must allege facts, not mere conclusions, to establish his or her claim as a viable cause of action. *Vernon v. Schuster*, 179 Ill. 2d 338, 344 (1997). A claim should not be dismissed pursuant to section 2-615 unless no set of facts can be proved that would entitle the plaintiff to recover. *Iseberg v. Gross*, 227 Ill. 2d 78, 86 (2007). We review *de novo* the trial court's dismissal of the plaintiff's action. *Vitro v. Mihelcic*, 209 Ill. 2d 76, 81 (2004).

- 3 -

¶ 10    A court's primary objective in construing the language of an insurance policy is to ascertain and give effect to the intentions of the parties as expressed by the language of the policy. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). Like any contract, an insurance policy is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 362-63 (2006). If the words used in the policy, given their plain and ordinary meanings, are unambiguous, they must be applied as written. *Id.* at 363.

¶ 11    The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent. *Paszkowski v. Metropolitan Water Reclamation District of Greater Chicago*, 213 Ill. 2d 1, 6 (2004). Our analysis begins within the statutory language, which remains the best indication of that intent. *Metzger v. DaRosa*, 209 Ill. 2d 30, 34-35 (2004). The language must be afforded its plain, ordinary, and popularly understood meaning. *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 279 (2003). When the language is unambiguous, the statute must be applied as written without resorting to other aids of construction. *Lawrence v. Regent Realty Group, Inc.*, 197 Ill. 2d 1, 10 (2001).

¶ 12    We reject the plaintiff's argument as contrary to the plain language of the Pesticide Act. The plain language of the Pesticide Act reveals that it is intended to protect persons who suffer personal injury or property damage as the result of pesticide application. The plaintiff here did not suffer any personal injury or property damage. Rather, it caused property damage to its customers' lawns. To accept the plaintiff's argument would require us to interpret the terms "cause" and "suffer" as synonymous. That we decline to do.

¶ 13    As the plaintiff was not an intended beneficiary of the Pesticide Act's protections, its rights were governed by the terms of its contract with Florists. *Cf. Great American Insurance Co. v. Brad Movers, Inc.*, 65 Ill. App. 3d 357, 362 (1978) (claimants were statutory beneficiaries whose rights could not be defeated by the terms of a contract to which they were not parties). Accordingly, we need not address whether the Pesticide Act superseded the policy provisions stating that the plaintiff was not entitled to coverage based on work that it incorrectly performed.

¶ 14                                   CONCLUSION

¶ 15    For the foregoing reasons, the judgment of the circuit court of Stephenson County is affirmed.

¶ 16    Affirmed.