2022 IL App (1st) 210930

THIRD DIVISION
March 30, 2022

No. 1-21-0930

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| ABW DEVELOPMENT, LLC, d/b/a PAW Management, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 20 CH 04647 |
| CONTINENTAL CASUALTY COMPANY, | ) ) | Honorable Cecilia A. Horan, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Presiding Justice Gordon and Justice Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, ABW Development, LLC, d/b/a PAW Management, is the owner and operator of medical imaging clinics in Illinois and Indiana. Plaintiff sought to recover from its insurer, defendant, Continental Casualty Company, losses that plaintiff allegedly suffered due to the COVID-19 pandemic and due to governmental orders issued in response. After defendant denied plaintiff's claim, plaintiff sought a declaratory judgment that the losses were covered by its policy and that it was entitled to recover them. On motion of defendant, the circuit court dismissed plaintiff's complaint, concluding that the unambiguous terms of the policy did not cover plaintiff's alleged losses. Plaintiff appeals that dismissal.

¶ 2    The record shows that plaintiff purchased an insurance policy from defendant. The policy was effective for the period from January 3, 2020, to January 3, 2021, and provided coverage for plaintiff's business personal property located at three clinic locations in Illinois and one clinic location in Indiana.

¶ 3    The policy contained a "Businessowners Special Property Coverage Form," pursuant to which defendant agreed to "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from a Covered Cause Of Loss." A "Covered Cause of Loss" was defined as "Risks of Direct Physical Loss," unless an exclusion or limitation applied.

¶ 4    The policy also contained a "Business Income and Extra Expense" endorsement, providing coverage for "Business Income" and "Extra Expense." Regarding "Business Income," defendant agreed to "pay for the actual loss of Business Income [plaintiff] sustain[ed] due to the necessary 'suspension' of [its] 'operations' during the 'period of restoration.' " "Suspension" was defined as the "partial or complete cessation of [plaintiff's] business activities" and "operations" was defined as "the type of [plaintiff's] business activities occurring at the described premises and tenantability of the described premises." The "period of restoration" was defined as the period that:

> "Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and [e]nds on the earlier of: (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location."

¶ 5    The provision further stated that the suspension "must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result

from a Covered Cause of Loss."

¶ 6    As to "Extra Expense," the policy defined that term to mean "reasonable and necessary expenses [plaintiff] incur[ed] during the 'period of restoration' that [plaintiff] would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss."

¶ 7    The policy further provided that defendant would "not pay for loss or damage caused by *** Fungi, Wet Rot, Dry Rot and Microbes." "Microbes" was defined as "Any non-fungal microorganism or nonfungal, colony-form organism that causes infection or disease."

¶ 8    Finally, the policy included a Civil Authority endorsement, which "extended [plaintiff's Business Income and Extra Expense coverage] to apply to the actual loss of Business Income [plaintiff] sustain[ed] and reasonable and necessary Extra Expense [plaintiff] incur[red] caused by action of civil authority that prohibits access to the described premises." The endorsement further provided that the civil authority action "must be due to direct physical loss of or damage to property at locations, other than described premises, caused by or resulting from a Covered Cause of Loss."

¶ 9    On June 22, 2020, plaintiff filed a complaint for a declaratory judgment in the circuit court. Plaintiff alleged that it had been forced to suspend "much of its business activities *** due to the COVID-19 crisis and the ensuing orders of civil authorities." Plaintiff noted that on March 11, 2020, the World Health Organization characterized COVID-19 as a pandemic. Thereafter, Illinois Governor J.B. Pritzker issued executive orders "closing" nonessential businesses on or about March 16, 2020, and requiring Illinois residents to stay at home, with exceptions for essential activities, on March 20, 2020. Plaintiff further alleged that the Indiana Governor issued a similar "Stay at Home Order" on March 23, 2020, requiring Indiana residents to stay at home, except for essential activities. Plaintiff alleged that it "sustained and continues to sustain, losses due to the

3

virus that causes COVID-19," due to the "spread of COVID-19 in the community" and due to "the actions of the above referenced civil authorities."

¶ 10    Plaintiff asserted that it was "likely" that SARS-CoV-2, the virus that causes COVID-19 (the COVID-19 virus), had been physically present at plaintiff's premises during the policy period and that plaintiff had "sustained direct physical loss and damage to items of property and *** to their premises *** as a result of the presence of" the virus "and/or the COVID-19 crisis." It further alleged that the "presence" of any particles from the COVID-19 virus "render[ed]" the premises, and items of physical property, "unsafe," impairing their "value, usefulness and/or normal function," and causing "direct physical harm or loss to property." Plaintiff maintained that its operations had "been suspended" due to the "physical loss and damage" to its property and the premises and due to the "orders issued by civil authorities, thereby causing an actual loss of income."

¶ 11    Plaintiff stated that it had submitted a claim to defendant, but that defendant refused to pay plaintiff's claim for losses. Among other things, plaintiff requested a declaration that it sustained physical loss or damage, that the presence of the COVID-19 virus in the community and on plaintiff's property is a covered cause of loss, that "the COVID-19 crisis" constituted a covered cause of loss, and that the losses plaintiff incurred were covered under the policy.

¶ 12    Finally, plaintiff asserted a claim for bad faith denial of coverage pursuant to section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2018)), contending that defendant's refusal to provide coverage was "vexatious and unreasonable."

¶ 13    On November 5, 2020, defendant filed a motion to dismiss plaintiff's complaint pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2018)). Defendant contended that plaintiff had not alleged, and could not allege, that there was "direct physical loss

of or damage to" its property as required for business loss coverage or that there was "direct physical loss of or damage to" another property as required for coverage under the civil authority endorsement. Defendant explained that the Illinois Supreme Court had held that "physical" injury to property requires that a property be "altered in appearance, shape, color or in other material dimension" and that plaintiff alleged no such physical alteration. Indeed, plaintiff had not "allege[d] that the virus causing COVID-19 was even *found* at the covered properties." (Emphasis in original.) Additionally, even if plaintiff had adequately alleged the presence of the virus, the virus did "not physically alter the appearance, shape, color, structure, or other material dimension of the property," where the virus dies naturally on surfaces within hours or days or can be killed or removed with disinfectants or routine cleaning. Defendant argued that plaintiff's allegations asserted only economic loss from its inability to use its premises and not any "direct physical loss of or damage to" property and the policy specifically excluded such "loss of use" coverage.

¶ 14    As to civil authority coverage, defendant alleged that such coverage applied when there was "physical loss of or damage to" property at other locations and that plaintiff's allegations did not suggest that the COVID-19 virus causes physical property damage. Defendant also explained that civil authority coverage is triggered only when physical access to the premises is "prohibit[ed]" and not when an insured is prevented from operating its business. Defendant argued that none of the executive orders prohibited access to plaintiff's premises and, in fact, the orders permitted plaintiff to keep its clinics open as "essential" healthcare facilities.

¶ 15    Alternatively, defendant argued that, even if plaintiff allegations were sufficient to trigger coverage, any damages were excluded under the policy. Specifically, defendant asserted that the policy excluded coverage for damage caused by "Fungi, Wet Rot, Dry Rot and Microbes," and that the term "microbes" included viruses, like the one that causes COVID-19. The policy also

excluded losses caused by "[c]ontamination by other than 'pollutants,' " which defendant argued included contamination caused by viruses.

¶ 16    Finally, defendant asserted that plaintiff's bad faith denial of coverage claim necessarily failed where no coverage was owed under the policy.

¶ 17    On December 18, 2020, plaintiff responded to defendant's motion to dismiss. Plaintiff argued that there was no physical alteration requirement for claims of physical loss of or damage and that requiring a "physical alteration" ignored the disjunctive language requiring "loss of or damage to" property. Plaintiff asserted that its allegations that plaintiff was forced to suspend their operations as a result of the virus's likely presence on the premises, which rendered the physical property unsafe and impairing its usefulness, was sufficient to defeat defendant's motion. Plaintiff compared the presence of the COVID-19 virus to cases that held that contamination by toxins, such as asbestos and ammonia, constituted property damage.

¶ 18    Plaintiff further argued that civil authority coverage applied because the executive orders entered in Illinois and Indiana referenced the virus's presence on surfaces, which, it argued, constituted "damage to other properties." Plaintiff also contended that the policy did not "require[ ] a complete prohibition of all access" (emphasis omitted) to the premises and that the executive orders "prohibited access to [p]laintiff's properties" by "forbidding [p]laintiff from making use of its premises for all of their intended purposes, including those involving non-essential procedures."

¶ 19    Finally, plaintiff argued that defendant's position that the "Fungi, Wet Rot, Dry Rot and Microbes" exclusion barred coverage for losses caused by viruses should be rejected because defendant made "misrepresentations to the regulatory authorities with respect to the submission and approval of [the] policy provision".

¶ 20    On July 6, 2021, the circuit court issued an order dismissing plaintiff's claims with

prejudice. First, the court held that plaintiff failed to allege coverage under the business income and extra expense provisions because COVID-19 does not cause "direct physical loss of or damage to property." As the court explained, "[t]aken as a whole, the insuring agreement unambiguously requires that 'direct physical loss of or damage to property' necessitates that the property is altered in appearance, shape, color or in other material dimension." The mere presence of the COVID-19 virus does not trigger coverage, the court concluded, because it merely "lands on surface[s] but does not penetrate them" and can be "easily abated" with "disinfectant." "Moreover, even where the virus is present, the health dangers of COVID-19 abate after only a few days." The court found that "the presence of the COVID-19 virus on property or in premises is vastly different than contamination of a premises by asbestos, ammonia, or other toxic substances" and that plaintiff's "allegations of suspension of operations due to the possible presence of the COVID-19 virus at the insured premises are not allegations of 'direct physical loss of or damage to property.' " Because the court found no " 'direct physical loss of or damage to property' sufficient to trigger coverage,' " the court declined to address defendant's alternative argument that the claims were barred by the "Fungi, Wet Rot, Dry Rot and Microbes" exclusion.

¶ 21    Regarding the civil authority endorsement, the court found that plaintiff had similarly failed to allege coverage under that provision where there was no allegation of "any direct physical loss of or damage to property at locations other than the covered premises" as required for such coverage.

¶ 22    Finally, the court rejected plaintiff's claim for bad faith denial of coverage under section 155 of the Insurance Code, explaining that where no coverage is owed, "there [could] be no finding that an insurer acted vexatiously or unreasonably with respect to the claim." Having found that plaintiff failed to "sufficiently plead coverage under the policy," the court concluded that its claim

for bad faith denial of coverage necessarily failed as well.

¶ 23 The court dismissed the complaint, with prejudice, finding that plaintiff was "not able to plead facts which would entitle it to coverage." Plaintiff filed a timely notice of appeal on August 5, 2021.

¶ 24 In this appeal, plaintiff argues that the circuit court erred in granting defendant's section 2-615 motion to dismiss and dismissing its complaint.

¶ 25 A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face. *K. Miller Construction Co. v. McGinnis*, 238 Ill. 2d 284, 291 (2010). In ruling on a section 2-615 motion, only those facts apparent from the face of the pleadings, matters of which the court can take judicial notice, and judicial admissions in the record may be considered. *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). The court must accept as true all well-pleaded facts in the complaint and all reasonable inferences that may be drawn from those facts. *K. Miller Construction Co.*, 238 Ill. 2d at 291. However, the "court cannot accept as true mere conclusions" of law. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31; see also *Demeester's Flower Shop & Greenhouse, Inc. v. Florists' Mutual Insurance Co.*, 2017 IL App (2d) 161001, ¶ 9 ("[A] plaintiff must allege facts, not mere conclusions, to establish his or her claim ***."). Illinois "is a fact-pleading jurisdiction" and "[w]hile the plaintiff is not required to set forth evidence in the complaint ***, the plaintiff must allege facts sufficient to bring a claim." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). We review *de novo* an order granting a section 2-615 motion to dismiss. *Pooh-Bah Enterprises, Inc.*, 232 Ill. 2d at 473.

¶ 26 When an insured sues its insurer over a denial of coverage, "the existence of coverage is an essential element of the insured's case, and the insured has the burden of proving that his loss

falls within the terms of his policy." *St. Michael's Orthodox Catholic Church v. Preferred Risk Mutual Insurance Co.*, 146 Ill. App. 3d 107, 109 (1986). The construction of an insurance policy is a question of law properly resolved by the court on a motion to dismiss. *Traveler's Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292 (2001). "In construing the language of [an insurance] policy, the court's primary objective is to ascertain and give effect to the intent of the parties to the contract." *Id.*; see also *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). If the words of a policy are clear and unambiguous, a court must afford them their plain, ordinary, and popular meaning. *Eljer*, 197 Ill. 2d at 292-93, 298. "Like any contract, an insurance policy is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose." *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 362 (2006). If the words used in the policy, given their plain and ordinary meanings, are unambiguous, they must be applied as written. *Id.* at 363. Courts must "not strain to find ambiguity in an insurance policy where none exists." (Internal quotation marks omitted.) *Eljer*, 197 Ill. 2d at 293.

¶ 27    We first address plaintiff's claim for business income and extra expense coverage. As stated above, the policy provides that defendant will "pay for direct physical loss of or damage to Covered Property at the premises *** caused by or resulting from a Covered Cause Of Loss." The business income and extra expense endorsement extends this property coverage to "loss of Business Income" sustained "due to the necessary 'suspension' of [plaintiff's] 'operations' during the 'period of restoration,' " but only when the "suspension" is "caused by direct physical loss of or damage to property at the described premises."

¶ 28    The parties dispute hinges primarily upon whether plaintiff's alleged losses can constitute "direct physical loss of or damage to" plaintiff's property. Defendant argues that the plain language

of the policy provision requires a tangible physical alteration to the covered property and that plaintiff has not pled sufficient facts to meet that requirement. Plaintiff contends that it need not show a physical alteration and that its allegations that the COVID-19 virus "render[ed] the property unsafe and unusable for [plaintiff']s intended purpose" is sufficient to constitute a covered "direct physical loss."

¶ 29    Although the Illinois Supreme Court has not specifically addressed the issue of whether damage from the possible or actual presence of the COVID-19 virus constitutes "direct physical loss of or damage to" property, it has interpreted the term "physical" in an insurance policy. *Eljer*, 197 Ill. 2d at 301. In examining the "plain, ordinary and popular meaning," of the term "physical," the court relied on the dictionary definition: " 'of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary: MATERIAL, NATURAL.' " *Id.* (quoting Webster's Third New International Dictionary 1706 (1993)). The supreme court concluded that "the term 'physical injury' unambiguously connotes *** an alteration in appearance, shape, color or in other material dimension." *Id.* at 312.

¶ 30    Similarly here, the word "physical" is not defined in the policy and thus should be given its "plain, ordinary, and popular meaning." *Id.* at 292-93, 298. We find no reason to depart from the definition used by our supreme court in *Eljer*, and accordingly we conclude that the policy at issue in this case unambiguously requires that the covered loss or damage be physical in nature, meaning that property has been "alter[ed] in appearance, shape, color or in other material dimension." *Id.* at 331.

¶ 31    The policy's reference to, and definition of, the "period of restoration" further supports this conclusion. As stated, the policy states that defendant will pay for the "loss of Business Income" sustained "due to the necessary 'suspension' of [plaintiff's] 'operations' during the 'period of

restoration," but only when the "suspension" is "caused by direct physical loss of or damage to property at the described premises." Significantly, the "period of restoration" is defined as beginning "with the date of direct physical loss or damage" and ending on the earlier of "(1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or (2) The date when business is resumed at a new permanent location." The policy's focus on repairing, rebuilding, or replacing property (or moving entirely to a new location), indicates that the "loss" or "damage" that gives rise to business income coverage has a physical nature that can be fixed or that the physical loss or damage is so extensive that it requires a complete move to a new location. See *Mudpie, Inc. v. Travelers Casualty Insurance Company of America*, 15 F.4th 885, 892 (9th Cir. 2021) ("coverage extends only until covered property is repaired, rebuilt, or replaced," which "suggests the [p]olicy contemplates providing coverage only if there are physical alterations to the property").

¶ 32    In so holding, we join the vast majority of authority from other jurisdictions, examining the same or similar policy language, including the Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh federal appellate circuits. See *10012 Holdings, Inc. v. Sentinel Insurance Co.*, 21 F.4th 216, 222 (2d Cir. 2021) ("the terms 'direct physical loss' and 'physical damage' in the Business Income and Extra Expense provisions do not extend to mere loss of use of a premises, where there has been no physical damage to such premises; those terms instead require actual physical loss of or damage to the insured's property"); *Uncork and Create LLC v. Cincinnati Insurance Co.*, No. 21-1311, --- F.4th ---, 2022 WL 662986, at *6 (4th Cir. 2022) (concluding that "the terms 'physical loss' [and] 'physical damage' *** require[d] a material alteration to the property" and that "neither the closure order nor the Covid-19 virus caused present or impending material destruction or material harm that physically altered the covered property");

*Terry Black's Barbecue, L.L.C. v. State Automobile Mutual Insurance Co.*, 22 F.4th 450, 456 (5th Cir. 2022) ("Considering the plain meaning of 'physical loss,' we conclude [the plaintiff]'s claim is not covered by the [business income and extra expense coverage] provision. [The plaintiff] has failed to allege any tangible alteration or deprivation of its property."); *Estes v. Cincinnati Insurance Co.*, 23 F.4th 695, 700, 702 (6th Cir. 2022) ("[A] direct physical loss requires the tangible destruction or deprivation of property. *** [N]either the pandemic nor the government shutdown orders caused a 'direct' 'physical loss' to [the plaintiff]'s 'property,' so [the plaintiff] cannot recover under the policy provisions on which it relies."); *Sandy Point Dental, P.C. v. Cincinnati Insurance Co.*, 20 F.4th 327, 335 (7th Cir. 2021) (concluding that the plaintiff's allegation that the "presence of the coronavirus on or around plaintiff'[s] premises has rendered the premises unsafe and unfit for its intended use *** fail[ed] [to] adequately to allege 'direct physical loss.' " "Having alleged neither a physical alteration to the property nor its equivalent in its amended complaint, [the plaintiff] failed adequately to allege a 'direct physical loss' under the Policy."); *Oral Surgeons, P.C. v. Cincinnati Insurance Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021) ("[T]here must be some physicality to the loss or damage of property—*e.g.*, a physical alteration, physical contamination, or physical destruction."); *Mudpie, Inc.*, 15 F.4th at 892 (concluding that the "phrase 'physical loss of or damage to' *** requir[es] an insured to allege physical alteration of its property"); *Goodwill Industries of Central Oklahoma, Inc. v. Philadelphia Indemnity Insurance Co.*, 21 F.4th 704, 711 (10th Cir. 2021) ("[The plaintiff]'s temporary inability to use its property for its intended purpose was not a 'direct physical loss.' To conclude otherwise would ignore the word 'physical' and violate the requirement that every part of a policy be given meaning."); *Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Insurance Co.*, No. 21-11046, 2021 WL 3870697, at *2 (11th Cir. Aug. 31, 2021) ("[The plaintiff] has alleged nothing

12

that could qualify, to a layman or anyone else, as physical loss or damage. Here, the shelter-in-place order that [the plaintiff] cites did not damage or change the property in a way that required its repair or precluded its future use for dental procedures.").

¶ 33    Additionally, the day before oral argument was held in this case, the Illinois second district appellate court issued an opinion in which it interpreted almost identical policy language, and held that "neither the presence of the virus at [the plaintiff]'s premises nor the pandemic-triggered executive orders that barred in-person dining at restaurants constitute[d] 'direct physical loss of or damage to' [the plaintiff]'s property." *Sweet Berry Café, Inc. v. Society Insurance, Inc.*, 2022 IL App (2d) 210888, ¶ 1. Then, following oral argument, another panel of this district issued an opinion consistent with the above weight of authority. See *Lee v. State Farm Fire & Casualty Co.*, 2022 IL App (1st) 210105, ¶ 20 (affirming the dismissal of a restaurant's declaratory judgment action where its losses attributable to COVID-19 closure orders were not covered under the restaurant's business interruption coverage, which required "direct physical loss" to covered property. The restaurant's claimed losses "constituted an economic loss, and not a '*physical loss*' to covered property to trigger coverage under the policy." (Emphasis in original.)).

¶ 34    Plaintiff, however, asks us to follow a handful of federal district court cases, which have interpreted similar policy language to cover losses due to the COVID-19 virus or government-imposed COVID-19 closure or shutdown orders. *See In re Society Insurance Co. COVID-19 Business Interruption Protection Insurance Litigation*, 521 F. Supp. 3d 729, 739-44 (N.D. Ill. 2021); *Studio 417, Inc. v. Cincinnati Insurance Co.*, 478 F. Supp. 3d 794, 801 (W.D. Mo. 2020) ("even absent a physical alteration, a physical loss may occur when the property is uninhabitable or unusable for its intended purpose"); *Blue Springs Dental Care, LLC v. Owners Insurance Co.*, 488 F. Supp. 3d 867, 873 (W.D. Mo. 2020). We disagree with those cases and observe that since

they were decided, corresponding federal appellate courts in the same circuits have spoken to the contrary. See *supra* ¶ 32; *Sandy Point Dental, P.C.*, 20 F.4th at 335; *Oral Surgeons, P.C.*, 2 F.4th at 1144.

¶ 35    Having concluded that "physical loss of or damage to" property requires that the property has been "alter[ed] in appearance, shape, color or in other material dimension," we must determine whether plaintiff has met that requirement. Although plaintiff alleged that the COVID-19 virus caused physical loss or damage to its property, the complaint does not allege any facts that would support that conclusion. Indeed, plaintiff does not even allege that the virus was present at any of its properties, only alleging that its presence was "likely." Nonetheless, even assuming the COVID-19 virus was present at the premises, the mere presence of the virus on surfaces does not constitute "physical loss of or damage to property" because COVID-19 does not physically alter the appearance, shape, color, structure, or other material dimension of the property. As the Seventh Circuit explained:

> "Even if the virus was present and physically attached itself to [the plaintiff]'s premises, [the plaintiff] does not allege that the virus altered the physical structures to which it attached, and there is no reason to think that it could have done so. While the impact of the virus on the world over the last year and a half can hardly be overstated, its impact on physical property is inconsequential: deadly or not, it may be wiped off surfaces using ordinary cleaning materials, and it disintegrates on its own in a matter of days. We thus find no reversible error in the district court's denial of [the plaintiff]'s motion for leave to amend its complaint." (Emphases omitted.) *Sandy Point Dental*, 20 F.4th at 335.

¶ 36    Accordingly, plaintiff has alleged no physical alteration of its property that would bring its

alleged losses within its business income and extra expense coverage. Because we have concluded that plaintiff did not plead sufficient factual allegations to support business income and extra expense coverage for its alleged losses, we need not reach defendant's alternative basis for excluding those losses based on the "Fungi, Wet Rot, Dry Rot and Microbes" exclusion. See *Wells v. State Farm Fire & Casualty Insurance Co.*, 2021 IL App (5th) 190460, ¶ 27 ("An exclusion in an insurance policy is a provision that eliminates coverage that would have existed in the absence of the exclusion.").

¶ 37    Next we turn to plaintiff's claim for coverage under the civil authority endorsement. As stated above, such coverage applies "to the actual loss of Business Income [plaintiff] sustain[ed] and reasonable and necessary Extra Expense [plaintiff] incur[red] caused by action of civil authority that prohibits access to the described premises." The endorsement explicitly requires that the civil authority action "must be due to direct physical loss of or damage to property at locations, other than described premises, caused by or resulting from a Covered Cause of Loss."

¶ 38    As with business income coverage and extra expense coverage, examined above, the trigger for civil authority coverage is "direct physical loss or damage to" property, though for civil authority coverage, the property suffering the loss or damage is that of third parties rather than plaintiff's property.

¶ 39    Just as plaintiff failed to plead sufficient factual allegations to support its conclusion that the COVID-19 virus caused direct physical loss to plaintiff's property, it also failed to allege any facts that would indicate that the virus caused direct physical loss or damage to any other property. Plaintiff's allegation that other third-party locations "contain[ed] the presence of [COVID-19 virus] particles" is insufficient to allege direct physical loss or damage because, as explained above, the mere presence of the COVID-19 virus does not constitute physical loss or damage.

15

Therefore, by the policy's terms, the civil authority provision does not apply.

¶ 40    Additionally, the civil authority endorsement applies only where "action of civil authority *** *prohibits access to* the described premises." (Emphasis added). Plaintiff has not alleged facts that would indicate that access to its premises was ever "prohibit[ed]," only contending that the executive orders prohibited plaintiff from "operating its regular businesses," or making its full desired use of its premises. See *Southern Hospitality, Inc. v. Zurich American Insurance Co.*, 393 F.3d 1137, 1140 (10th Cir. 2004) (civil authority coverage requires that "access to the premises [is] completely prohibited"); *Firenze Ventures LLC v. Twin City Fire Insurance Co.*, 532 F. Supp. 3d 607, 615-16 (N.D. Ill. 2021) ("[A]n 'order of a civil authority' must have 'specifically prohibited' 'access' to the insured premises ***."). As the owner and operator of medical imaging clinics, plaintiff does not dispute that it was allowed to continue using its facilities to provide essential services, arguing only that the executive orders "forbade [plaintiff] from making use of its premises for all of their intended purposes, including non-essential procedures." In these circumstances, plaintiff cannot credibly allege that *access to* its facilities was prohibited.

¶ 41    Finally, plaintiff contends that the circuit court improperly dismissed its claim for bad faith denial of coverage pursuant to section 155 of the Insurance Code (215 ILCS 5/155 (West 2018)). Section 155 provides "an extracontractual remedy to policy-holders whose insurer's refusal to recognize liability and pay a claim under a policy is vexatious and unreasonable." (Internal quotation marks omitted.) *Phillips v. Prudential Insurance Co. of America*, 714 F.3d 1017, 1023 (7th Cir. 2013). Plaintiff's sole argument on this point is that the court improperly dismissed this claim based on an erroneous conclusion that it had failed to allege coverage under the policy. As we have previously rejected that argument, plaintiff's bad faith denial of coverage claim necessarily fails as well. Where, as here, no coverage is owed under the policy, there can be no

finding that the insurer acted vexatiously or unreasonably with respect to the claim. *Joseph T. Ryerson & Son, Inc. v. Travelers Indemnity Co. of America*, 2020 IL App (1st) 182491, ¶ 48; *Rhone v. First American Title Insurance Co.*, 401 Ill. App. 3d 802, 815 (2010); *Martin v. Illinois Farmers Insurance*, 318 Ill. App. 3d 751, 764 (2000) (an insurer "cannot be liable for section 155 relief where no benefits are owed").

¶ 42     For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 43     Affirmed.

**No. 1-21-0930**

| | |
|---|---|
| **Cite as:** | *ABW Development, LLC v. Continental Casualty Co.*, 2022 IL App (1st) 210930 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 20-CH-04647; the Hon. Cecilia A. Horan, Judge, presiding. |
| **Attorneys for Appellant:** | Glenn L. Udell, Michael S. Pomerantz, and Bryan D. King, of Brown, Udell, Pomerantz & Delrahim, Ltd., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Brent R. Austin, Michael L. McCluggage, and Caroline P. Malone, of Eimer Stahl, LLP, of Chicago, for appellee. |