2023 IL App (1st) 220905-U

No. 1-22-0905

Order filed February 22, 2023

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| RAGAN CONSULTING GROUP LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 21 CH 3823 |
| | ) | |
| CONTINENTAL CASUALTY COMPANY, | ) | Honorable |
| | ) | Thaddeus L. Wilson, |
| Defendant-Appellee. | ) | Judge presiding. |

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice McBride and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's grant of defendant's motion to dismiss where plaintiff's alleged business income losses and necessary extra expenses resulting from the COVID-19 Virus and related government orders were not covered by the commercial property insurance policy issued by defendant.

¶ 2    After plaintiff Ragan Consulting Group LLC, a management consulting firm, incurred various alleged business income losses and necessary extra expenses due to the COVID-19 Virus and related government orders, it sought coverage under its commercial property insurance policy

issued by defendant Continental Casualty Company.[1] Continental denied coverage under the policy, and as a result, Ragan filed a complaint for declaratory relief and breach of contract. On Continental's motion, the circuit court dismissed Ragan's complaint with prejudice. Ragan now appeals that dismissal and contends that the insurance policy covered its alleged business income losses and necessary extra expenses due to the COVID-19 Virus and related government orders. Ragan therefore argues that the circuit court erred by granting Continental's motion to dismiss. For the reasons that follow, we affirm the circuit court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4                                A. The Insurance Policy

¶ 5     Ragan is a Chicago-based company that provides management consulting to various entities. Ragan purchased a commercial property insurance policy for its business from Continental that became effective on February 24, 2020, and ended on March 4, 2021. The policy contained various coverages for business income losses and necessary extra expenses to Ragan's property located at its office in downtown Chicago. Under one part of the policy, the "Business Income Coverage" provision, Continental agreed to:

> "pay for the actual loss of Business Income [Ragan] sustain[ed] due to the necessary 'suspension' of [its] 'operations' during the 'period of restoration.' The 'suspension' must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss."

---

[1] SARS-CoV-2 is the virus that causes the disease Covid-19. See *Firebirds International, LLC v. Zurich American Insurance Co.*, 2022 IL App (1st) 210558, ¶ 5. For simplicity sake, we will refer to the virus as the "COVID-19 Virus."

A "period of restoration" was defined as "the period of time that *** [b]egins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises," and ends the earlier of when the lost or damaged property "should be repaired, rebuilt or replaced with reasonable speed and similar quality" or "when business is resumed at a new permanent location." Under the policy, a "Covered Cause of Loss" included "risks of direct physical loss" unless a limitation or exclusion applied. Additionally, under another part of the policy, the "Extra Expense Coverage" provision, Ragan could recover "reasonable and necessary expenses [it] incur[red] during the 'period of restoration' that [it] would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss." Lastly, as relevant to this appeal, the policy contained "Civil Authority Coverage," which covered the:

> "actual loss of Business Income [Ragan] sustain[ed] and reasonable and necessary Extra Expense [it] incur[red] caused by action of civil authority that prohibit[ed] access to the described premises. The civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises, caused by or resulting from a Covered Cause of Loss."

¶ 6                                    B. The COVID-19 Virus and the Instant Litigation

¶ 7      In late January 2020, the World Health Organization declared the COVID-19 Virus a public health emergency of international concern. See Statement on the Second Meeting of the International Health Regulations (2005) Emergency Committee Regarding the Outbreak of Novel Coronavirus (2019-nCoV), https://www.who.int/news/item/30-01-2020-statement-on-the-second-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-outbreak-of-novel-coronavirus-(2019-ncov). Two months later, as the COVID-19 Virus began

to spread in Illinois, Governor JB Pritzker issued various executive orders and proclamations in an effort to curb the spread of the virus. Initially, Governor Pritzker declared the entire state of Illinois a disaster area. Proclamation No. 2020-38, 44 Ill. Reg. 4744 (Mar. 9, 2020), https://www2.illinois.gov/sites/gov/Documents/CoronavirusDisasterProc-3-12-2020.pdf. Subsequent to this disaster proclamation, Governor Pritzker issued an executive order that closed all public and private schools in Illinois serving pre-kindergarten through 12th grade, another executive order that prohibited large gatherings in private or public settings, another executive order that included a stay-at-home order for all nonessential activities and ordered all nonessential businesses to temporarily cease operation, as well as other executive orders having similar effects. See Exec. Order No. 2020-4, 44 Ill. Reg. 5531 (Mar. 13, 2020), https://www.illinois.gov/government/executive-orders/executive-order.executive-order-number-5.2020.html; Exec. Order No. 2020-5, 44 Ill. Reg. 5533 (Mar. 13, 2020), https://www.illinois.gov/government/executive-orders/executive-order.executive-order-number-5.2020.html; Exec. Order No. 2020-7, 44 Ill. Reg. 5536 (Mar. 16, 2020), https://www.illinois.gov/government/executive-orders/executive-order.executive-order-number-7.2020.html; Exec. Order No. 2020-10, 44 Ill. Reg. 5857 (Mar. 20, 2020), https://www.illinois.gov/government/executive-orders/executive-order.executive-order-number-10.2020.html.

¶ 8    Due to the above-referenced executive orders and others, Ragan closed its business on March 13, 2020. Ragan's business subsequently suffered due to the COVID-19 pandemic and related orders. In April 2020, because Ragan allegedly sustained a significant loss of business income and incurred various necessary extra expenses due to the COVID-19 pandemic and various government orders, Ragan provided notice to Continental of a claim under its commercial property

insurance policy. The following month, Continental responded to Ragan's notice of claim and noted that, despite Ragan's assertions, Ragan had not reported any direct physical loss of, or damage to, its property. As a result, Continental denied coverage under the policy.

¶ 9     In August 2021, as a result of this denial, Ragan filed the instant complaint against Continental in the circuit court seeking declaratory relief and damages for breach of contract. In the complaint, Ragan highlighted that the policy did not define the phrase " 'direct physical loss of or damage.' " But Ragan asserted that direct physical loss of, or damage to, property occurred when a covered cause of loss threatened or rendered property unusable or unsuitable for its intended purpose or unsafe for ordinary human occupancy or continued use. And based on this definition, Ragan posited that the shutdown orders caused direct physical loss of, or damage to, its property to invoke coverage under the Business Income Coverage and Extra Expense Coverage provisions of the policy as well as to other properties to invoke coverage under the Civil Authority Coverage provision of the policy. Alternatively, Ragan posited that the ubiquitous nature of the COVID-19 Virus caused direct physical loss of, or damage to, its property to invoke coverage under the Business Income Coverage and Extra Expense Coverage provisions of the policy as well as to other properties to invoke coverage under the Civil Authority Coverage provision of the policy. Based on these assertions, in Count I of its complaint, Ragan sought a declaration that there was coverage for its alleged business income losses and necessary extra expenses under the policy. And in Count II, Ragan asserted that Continental breached the policy by denying coverage, which caused it to suffer significant damages.

¶ 10     After Continental's attorneys filed an appearance on its behalf, the company moved to dismiss Ragan's complaint pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2020)). First, Continental observed that, under Illinois law, Ragan's alleged

business income losses and necessary extra expenses had to be caused by direct physical loss of, or damage to, to its property, meaning the property was tangibly altered in some material dimension. However, despite this requirement, Continental argued that Ragan failed to make any such allegations. Second, Continental posited that Ragan had not alleged, nor could they adequately allege, any of the prerequisites to invoke the Civil Authority Coverage because that provision applied when a civil authority prohibited access to an insured's premises. Continental asserted that Ragan failed to sufficiently allege that it had been prohibited from accessing its property, as required by the policy. Given these reasons, Continental contended that Ragan's complaint for declaratory judgment and breach of contract must be dismissed with prejudice.

¶ 11     In May 2022, after Ragan filed a response in opposition of Continental's motion to dismiss, the circuit court entered a written order granting Continental's motion. The court observed that, based on *Traveler's Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278 (2001), there must be a physical change to Ragan's property such that the property would need to be repaired or rebuilt before becoming useable again. Because Ragan did not allege such damage, the court found its allegations insufficient to sustain its causes of action under the Business Income Coverage and Extra Expense Coverage provisions of the policy. The court next noted that, under the Civil Authority Coverage provision, there must be physical loss or damage to a neighboring property, which was not present based on the facts Ragan alleged in its complaint. Consequently, the court granted Continental's motion and dismissed Ragan's complaint with prejudice.

¶ 12     Ragan timely appealed the circuit court's dismissal.

¶ 13                                    II. ANALYSIS

¶ 14     Ragan contends that the circuit court erred in dismissing its complaint for declaratory relief and breach of contract where its alleged business income losses and necessary extra expenses

incurred were covered under the Business Income Coverage, Extra Expense Coverage and Civil Authority Coverage provisions of its insurance policy with Continental.

¶ 15     A motion to dismiss brought under section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)) challenges the legal sufficiency of a complaint. *In re Estate of Powell*, 2014 IL 115997, ¶ 12. When reviewing a section 2-615 motion to dismiss, the circuit court must accept all well-pled facts in the complaint as true, as well as any reasonable inferences from those facts. *Id.* "The critical inquiry is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action on which relief may be granted." *Id.* A dismissal is proper under section 2-615 only when "it is clearly apparent from the pleadings that no set of facts can be proven that would entitle the plaintiff to recover." *Id.* When the plaintiff attaches an instrument, such as an insurance policy, to a pleading, that instrument becomes part of the pleading for purposes of any motion based upon the pleadings. *Bajwa v. Metropolitan Life Insurance Co.*, 208 Ill. 2d 414, 431 (2004). We review a dismissal pursuant to section 2-615 *de novo*. *In re Estate of Powell*, 2014 IL 115997, ¶ 12.

¶ 16     Additionally, this case involves the interpretation of an insurance policy, which is a legal question we review *de novo*. *Lee v. State Farm Fire and Casualty Company*, 2022 IL App (1st) 210105, ¶ 15. "When an insured sues its insurer over a denial of coverage, 'the existence of coverage is an essential element of the insured's case, and the insured has the burden of proving that [its] loss falls within the terms of [its] policy.' " *ABW Development, LLC v. Continental Casualty Co.*, 2022 IL App (1st) 210930, ¶ 26 (quoting *St. Michael's Orthodox Catholic Church v. Preferred Risk Mutual Insurance Co.*, 146 Ill. App. 3d 107, 109 (1986)). Under Illinois law, "the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005).

When interpreting an insurance policy, the primary goal "is to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Id.* "To ascertain the intent of the parties and the meaning of the words used in the insurance policy, the court must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purpose of the entire contract." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). When the language of an insurance policy is clear and unambiguous, we must give that language its plain and ordinary meaning. *Eljer*, 197 Ill. 2d at 292-93. However, if the language is ambiguous, we will construe the language against the insurer, who drafted the policy. *Id.* at 293.

¶ 17                    A. Business Income Coverage and Extra Expense Coverage

¶ 18    We begin with Ragan's claim for coverage under the Business Income Coverage and Extra Expense Coverage provisions of its insurance policy with Continental. The crux of potential coverage under these provisions is the phrase "direct physical loss of or damage to property." This is because to have its alleged business income losses and necessary extra expenses covered by the two provisions, there had to be "direct physical loss of or damage to property at the described premises," *i.e.*, Ragan's office. As noted in Ragan's complaint, its policy with Continental did not define that phrase or the word "physical." In *Eljer*, 197 Ill. 2d at 300-312, our supreme court interpreted the word "physical" in an insurance policy when the policy provided no definition, though not in the context of the COVID-19 Virus. Therein, the court concluded "that, under its plain and ordinary meaning, the term 'physical injury' unambiguously connotes damage to tangible property causing an alteration in appearance, shape, color or in other material dimension." *Id.* at 312. Recently, this court and the Seventh Circuit Court of Appeals, in applying Illinois law, addressed whether the COVID-19 Virus constituted direct physical loss of, or damage to, property

when a commercial insurance policy did not define the word "physical." See *ABW Development*, 2022 IL App (1st) 210930, ¶¶ 28-30; *Sweet Berry Cafe, Inc. v. Society Insurance, Inc.*, 2022 IL App (2d) 210088, ¶¶ 37-41; *Sandy Point Dental, P.C. v. Cincinnati Insurance Co.*, 20 F.4th 327, 331-32 (7th Cir. 2021).

¶ 19    In all three cases, the courts asserted that the word "physical" had to be given its plain and ordinary meaning, and in determining that meaning, the courts utilized the definition of "physical," as stated in *Eljer*. See *ABW Development*, 2022 IL App (1st) 210930, ¶¶ 26, 29-30; *Sweet Berry*, 2022 IL App (2d) 210088, ¶¶ 33, 40-41; *Sandy Point*, 20 F.4th at 331-33. As a result, in *ABW Development*, this court concluded that the policy in the case "unambiguously require[d] that the covered loss or damage be physical in nature, meaning that property has been 'alter[ed] in appearance, shape, color or in other material dimension.' " *ABW Development*, 2022 IL App (1st) 210930, ¶ 30 (quoting *Eljer*, 197 Ill. 2d at 301). In *Sweet Berry*, 2022 IL App (2d) 210088, ¶ 39, this court concluded that the policy in the case "unambiguously require[d] a physical alteration or substantial dispossession, not merely loss of use." And in *Sandy Point*, 20 F.4th at 333, the Seventh Circuit Court of Appeals, in applying Illinois law, concluded that " 'direct physical loss' require[d] a physical alteration to property." Like *ABW Development*, *Sweet Berry* and *Sandy Point*, we see no reason to depart from the definition of "physical," as stated in *Eljer*. As such, the word "physical" unambiguously connotes an alteration in appearance, shape, color or in other material dimension.

¶ 20    Our conclusion that the word "physical" connotes as such is buttressed by the policy's definition of "period of restoration," which is critical to Ragan having its alleged business losses and necessary extra expenses covered. As noted, under the Business Income Coverage provision, Continental agreed to "pay for the actual loss of Business Income [Ragan] sustain[ed] due to the

necessary 'suspension' of [its] 'operations' during the 'period of restoration.' " And a "period of restoration" was "the period of time that *** [b]egins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises," and ends either when the lost or damaged property "should be *repaired, rebuilt or replaced* with reasonable speed and similar quality" or "when business is resumed at a new permanent location." (Emphasis added.) As the Seventh Circuit Court of Appeals observed in *Sandy Point*, 20 F.4th at 333, "[w]ithout a physical alteration to property, there would be nothing to repair, rebuild, or replace." As such, in *Sandy Point*, the Seventh Circuit Court of Appeals found that the policy's definition of " 'period of restoration,' " which was similar to the definition in the instant case, "reinforce[d] the conclusion that 'direct physical loss' require[d] a physical alteration to property." *Id.* Thus, the definition of "period of restoration" in Ragan's policy supports our conclusion that the word "physical" unambiguously connotes an alteration in appearance, shape, color or in other material dimension.

¶ 21 Given the plain, ordinary and unambiguous definition of "physical," we now turn to Ragan's complaint to determine whether it sufficiently alleged facts to support the conclusion that the COVID-19 Virus or various government shutdown orders caused direct physical loss of, or damage to, its property. In its complaint, Ragan never alleged that the virus or shutdown orders caused an alteration in appearance, shape, color or in other material dimension to its property. Notably, Ragan never pled any factual assertions detailing what of its property was physically damaged or lost, what that physical damage was or what repairs or replacements were necessary to repair said physical damage or loss. In short, Ragan's complaint was bereft of any facts showing that there was any physical damage to, or loss of, its property. See *ABW Development*, 2022 IL App (1st) 210930, ¶¶ 35-36 (finding the plaintiff's alleged business income losses not covered by its insurance policy that required a direct physical loss of, or damage to, covered property where,

"[a]lthough plaintiff alleged that the COVID-19 virus caused physical loss or damage to its property, the complaint [did] not allege any facts that would support that conclusion").

¶ 22    Instead, Ragan's complaint asserted that direct physical loss of, or damage to, its property occurred when a covered cause of loss threatened or rendered its property unusable or unsuitable for its intended purpose. However, in *Sandy Point*, 20 F.4th at 335, the Seventh Circuit Court of Appeals addressed a similar argument from a dental business where the business "point[ed] only to the loss of the property's 'intended use.' " In rejecting that argument, the Seventh Circuit Court of Appeals asserted that was insufficient, and while the business "may have been unable to put its property to its preferred (and, we assume, its most lucrative) use," the business did not suffer a complete physical dispossession of its property. *Id.*

¶ 23    The same is true in the instant case. And merely because Ragan alleged that its property was rendered unusable or unsuitable for its intended purpose or unsafe for ordinary human occupancy or continued use, that is insufficient to establish direct physical loss of, or damage to, its property. Because Ragan failed to allege that the COVID-19 Virus or various government orders caused an alteration in appearance, shape, color or in other material dimension to its property, *i.e.*, a "direct physical loss of or damage to property," the allegations in Ragan's complaint are insufficient to establish that its alleged business income losses and necessary extra expenses were covered by the Business Income Coverage and Extra Expense Coverage provisions of its insurance policy. See *ABW Development*, 2022 IL App (1st) 210930, ¶ 36; *Firebirds International, LLC v. Zurich American Insurance Co.*, 2022 IL App (1st) 210558, ¶¶ 38-40; *Sweet Berry*, 2022 IL App (2d) 210088, ¶ 43; *Sandy Point*, 20 F.4th at 333-34.

¶ 24    Nevertheless, Ragan attempts to argue that the various decisions interpreting the phrase direct physical loss of, or damage to, property have mistakenly relied on our supreme court's

decision in *Eljer*. However, nearly every argument made by Ragan has been rejected in some form or fashion in the various decisions applying *Eljer*'s definition of "physical" to an insurance policy in the context of the COVID-19 Virus. See *ABW Development*, 2022 IL App (1st) 210930; *Sweet Berry*, 2022 IL App (2d) 210088; *Sandy Point*, 20 F.4th 327. Furthermore, Ragan highlights various cases from other jurisdictions to support its position that its insurance policy with Continental covered its alleged business income losses and necessary extra expenses. See, *e.g.*, *Risinger Holdings, LLC v. Sentinel Insurance Co., Ltd.*, 565 F. Supp. 3d 844 (E.D. Tex. 2021); *Susan Spath Hegedus, Inc. v. ACE Fire Underwriters Insurance Co.*, 538 F. Supp. 3d 457 (E.D. Pa. 2021); *Elegant Massage, LLC v. State Farm Mutual Automobile Insurance Co.*, 506 F. Supp. 3d 360 (E.D. Va. 2020). However, Illinois law is clear on this issue (see *ABW Development*, 2022 IL App (1st) 210930, ¶¶ 27-30; *Sweet Berry*, 2022 IL App (2d) 210088, ¶ 39; *Sandy Point*, 20 F.4th at 334), and thus, we need not look toward other jurisdictions for guidance.

¶ 25   Having failed to sufficiently allege that the COVID-19 Virus or various government shutdown orders caused a direct physical loss of, or damage to, its property, the circuit court properly found that Ragan's alleged business income losses and necessary extra expenses were not covered by the Business Income Coverage and Extra Expense Coverage provisions of its insurance policy with Continental.

¶ 26                     B. Civil Authority Coverage

¶ 27   Ragan next contends that the circuit court erred in finding that its complaint failed to sufficiently allege a claim for coverage under the Civil Authority Coverage provision of its insurance policy with Continental. Ragan argues that its complaint sufficiently alleged that the ubiquitous nature of the COVID-19 Virus caused direct physical loss of, or damage to, its neighboring properties in order to trigger coverage under the Civil Authority Coverage provision.

¶ 28    Under the Civil Authority Coverage provision of Ragan's policy, Continental agreed to cover the "actual loss of Business Income [Ragan] sustain[ed] and reasonable and necessary Extra Expense [it] incur[red] caused by action of civil authority that prohibit[ed] access to the described premises," *i.e.*, Ragan's office. However, "[t]he civil authority action must be due to direct physical loss of or damage to property at locations, other than [Ragan's office], caused by or resulting from a Covered Cause of Loss." Like with the potential coverage under the Business Income Coverage and Extra Expense Coverage provisions of the insurance policy, coverage under the Civil Authority Coverage provision of the policy required direct physical loss of, or damage to, property, though in this instance property other than Ragan's office. As previously discussed, Ragan failed to allege that the COVID-19 Virus or the shutdown orders caused an alteration in appearance, shape, color or in other material dimension of its property, let alone property at other locations. Therefore, Ragan failed to make a claim that its alleged business income losses and necessary extra expenses were covered by the Civil Authority Coverage provision of its insurance policy with Continental.

¶ 29    However, Ragan's claim for coverage under the Civil Authority Coverage provision fails for another reason. The policy only covers the actual loss of business income or necessary extra expenses attributable to actions issued by civil authorities that "prohibit[ed] access" to Ragan's office. Although in its complaint, Ragan claimed that the various government orders forced it to "effectively close" its business and the covered property, *i.e.*, its office, Ragan never asserted that it was prohibited from accessing its premises. See *ABW Development*, 2022 IL App (1st) 210930, ¶ 40 (where the plaintiff did not allege "facts that would indicate that access to its premises was ever 'prohibit[ed],' " and "only contend[ed] that the executive orders prohibited plaintiff from 'operating its regular businesses,' or making its full desired use of its premises," it could not claim

coverage under a civil authority provision of an insurance policy that required the civil authority order to prohibit access to its premises). Consequently, the circuit court properly found that Ragan's alleged business income losses and necessary extra expenses were not covered by the Civil Authority Coverage provision of its insurance policy with Continental.

¶ 30    Because we have concluded that Ragan failed to allege sufficient facts to establish that its alleged business income losses and necessary extra expenses were covered under the Business Income Coverage, Extra Expense Coverage and Civil Authority Coverage provisions of its insurance policy with Continental, the circuit court properly granted Continental's motion to dismiss as to Ragan's Count I for declaratory relief.

¶ 31                              C. Breach of Contract Claim

¶ 32    Although Ragan does not make any specific arguments toward the dismissal of its complaint's breach of contract cause of action (Count II), and rather focuses purely on the coverage issues, we briefly address this count for the sake of completeness. In order to state a claim for breach of contract, the plaintiff "must allege (1) the existence of a valid and enforceable contract, (2) substantial performance by the plaintiff, (3) a breach by the defendant, and (4) resultant damages." *Bankers Life & Casualty Co. v. American Senior Benefits LLC*, 2017 IL App (1st) 160687, ¶ 15. Based on our conclusions above that Ragan's policy with Continental did not cover Ragan's alleged business income losses and necessary extra expenses as a result of the COVID-19 Virus and related government orders, Continental could not have breached the insurance policy with Ragan by denying coverage. See *Lee*, 2022 IL App (1st) 210105, ¶ 23 (concluding that, where an insurance policy did not cover a business's claimed losses, "there can be no breach of the insurance contract premised on the allegation that [the insurer] improperly failed to provide

coverage"). Consequently, the circuit court properly granted Continental's motion to dismiss as to Ragan's Count II for breach of contract.

¶ 33                                D. Dismissal with Prejudice

¶ 34    Lastly, we note that, in granting Continental's motion to dismiss Ragan's complaint, the circuit court did so with prejudice. "[I]t is well established that a cause of action should not be dismissed with prejudice unless it is clear that no set of facts can be proved under the pleadings which would entitle plaintiffs to relief." *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008). In the instant case, Ragan has not made an argument that, assuming *arguendo*, the court properly granted Continental's motion to dismiss, its dismissal with prejudice was nevertheless improper. As such, any such argument is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited."). And consequently, the circuit court properly dismissed Ragan's complaint with prejudice.

¶ 35                                III. CONCLUSION

¶ 36    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 37    Affirmed.