2022 IL App (1st) 211222-U

FIFTH DIVISION
June 30, 2022

No. 1-21-1222

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| STATE & 9 STREET CORPORATION, d/b/a BULLDOG ALE HOUSE; AURORA BULL DOG COMPANY, d/b/a BULLDOG ALE HOUSE; 459 RANDALL CROSSINGS COMPANY, d/b/a BULLDOG ALE HOUSE; 6610 SHERIDAN CORPORATION, d/b/a BULLDOG ALE HOUSE; ROOSEVELT 100 CORPORATION, d/b/a BULLDOG ALE HOUSE; 2628 RT 59 COMPANY, d/b/a BURNT PIZZA COMPANY; 451 COMMONS COMPANY, d/b/a BULLDOG ALE HOUSE; 1480 GOLF CORPORATION, d/b/a BULLDOG ALE HOUSE; YORKTOWN TOASTMASTER CORPORATION, d/b/a HONEY BERRY CAFÉ; ROSELLE LLA, INC., d/b/a BULLDOG ALE HOUSE; BULL DOG ALE HOUSE, INC., d/b/a BULLDOG ALE HOUSE; MCHENRY 31 COMPANY, d/b/a BULLDOG ALE HOUSE; ALGONQUIN COMMONS COMPANY, d/b/a BULLDOG ALE HOUSE; and 157 WEBER COMPANY, d/b/a BULLDOG ALE HOUSE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs and Counterdefendants-Appellants, | ) ) ) | |
| v. | ) ) | No. 20 CH 4004 |
| SOCIETY INSURANCE, A MUTUAL COMPANY, | ) ) ) | Honorable |
| Defendant and Counterplaintiff-Appellee. | ) ) | Moshe Jacobius, Judge Presiding. |

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Hoffman and Connors concurred in the judgment.

**ORDER**

¶ 1   *Held:* In this insurance coverage dispute, we affirm the order of the circuit court granting the defendant insurance company's motion for judgment on the pleadings. The insureds failed to sufficiently plead that they were entitled to insurance coverage under business income, extra expense, civil authority, or contamination provisions in their commercial property damage liability policies. This failure precludes their claim of bad faith denial of coverage.

¶ 2   This appeal arises from a declaratory judgment action seeking insurance coverage for alleged business interruption losses caused by executive orders instituted by the governor to limit the operations of restaurants during the height of the COVID-19 pandemic. Plaintiffs-Counterdefendants, State & 9 Corporation, d/b/a Bulldog Ale House, Aurora Bull Dog Company, d/b/a Bulldog Ale House, 459 Randall Crossings Company, d/b/a Bulldog Ale House, 6610 Sheridan Corporation, d/b/a Bulldog Ale House, Roosevelt 100 Corporation, d/b/a Bulldog Ale House, 2628 Rt 59 Company, d/b/a Burnt Pizza Company, 451 Commons Company, d/b/a Bulldog Ale House, 1480 Golf Corporation, d/b/a Bulldog Ale House, Yorktown Toastmaster Corporation, d/b/a Honey Berry Café, Roselle LLA, Inc., d/b/a Bulldog Ale House, Bull Dog Ale House, Inc., d/b/a Bulldog Ale House, McHenry 31 Company, d/b/a Bulldog Ale House, Algonquin Commons Company, d/b/a Bulldog Ale House, and 157 Weber Company, d/b/a Bulldog Ale House (collectively, plaintiffs), are restaurant and tavern operators alleging that they sustained economic losses from the cessation of on-premises dining at their establishments because of the governor's orders, and the presence of the COVID-19 virus in the community and on their premises. The insurance policy at issue, a commercial property damage liability policy, provides that if the policyholder must suspend its operations because of "direct physical loss of or damage to" insured property, the policy will provide coverage for actual loss of business income incurred during a

"necessary suspension of operations" while the property is being repaired, rebuilt, or replaced. Plaintiffs also asserted a cause of action for bad faith denial of coverage under section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2020)). Defendant-Counterplaintiff Society Insurance (Society) filed an answer and counterclaim seeking a declaratory judgment that no insurance coverage existed for plaintiffs' claims under its policy and Illinois law. Society moved for a judgment on the pleadings under section 2-615(e) of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-615(e) (West 2020)), which the circuit court granted, finding there was no insurance coverage under the policy. We affirm.

¶ 3                                    BACKGROUND

¶ 4      Plaintiffs own and operate 14 taverns and restaurants in Illinois. On March 16, 2020, pursuant to the emergency powers granted him under section 7 of the Illinois Emergency Management Agency Act (20 ILCS 3305/7 (West 2020)), Governor JB Pritzker entered several executive orders in response to the COVID-19 pandemic. Order 2020-07 stated:

> "[A]ll businesses in the State of Illinois that offer food or beverages for on-premises consumption – including restaurants, bars, grocery stores, and food halls – must suspend service for and may not permit on-premises consumption. Such businesses are permitted and encouraged to serve food and beverages so that they may be consumed off-premises, as currently permitted by law, through means such as in-house delivery, third-party delivery, drive-through, and curbside pick-up. In addition, customers may enter the premises to purchase food or beverages for carry-out." Exec. Order No. 2020-07, 44 Ill. Reg. 5536 (Mar. 16, 2020), https://www2.illinois.gov/Documents/ExecOrders/2020/ExecutiveOrder-2020-07.pdf.

¶ 5    On March 20, 2020, Governor Pritzker issued executive order 2020-10, which designated restaurants serving food for consumption off-premises to be "essential" businesses. See Exec. Order No. 2020-10, 44 Ill. Reg. 5857 (Mar. 20, 2020), https://www2.illinois.gov/Documents/ExecOrders/2020/ExecutiveOrder-2020-10.pdf. The order stated that it "is consistent with and does not amend or supersede Section 1 of Executive Order 2020-07," and expressly provided that restaurants could continue to operate for purposes of preparing and serving food for consumption off-premises. *Id*. The order also stated that employees continue "Minimum Basic Operations" to comply with social distancing requirements "to maintain the value of the business's inventory, preserve the condition of the business's physical plant and equipment, ensure security, process payroll and employee benefits, or for related functions." *Id*. Governor Pritzker declared the intent of the executive orders was "to ensure that the maximum number of people self-isolate in their places of residence to the maximum extent feasible, while enabling essential services to continue, to slow the spread of COVID-19 to the greatest extent possible." *Id*. The governor issued subsequent executive orders that either disallowed on-premises dining, permitted outdoor on-premises dining, or reduced the capacity allowed for indoor dining. See, *e.g.*, Exec. Order No. 2021-10, 45 Ill. Reg. 22 (May 17, 2021), https://coronavirus.illinois.gov/resources/executive-orders/display.executive-order-number-10.2021.html. None of these orders prevented restaurant or tavern operators from selling food for carry-out or delivery.

¶ 6    Plaintiffs procured a "Businessowners Policy" from Society that includes a "Businessowners Special Property Coverage Form." The Coverage Form provides that Society "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." The policy further

defines a "Covered Cause of Loss" as "Direct Physical Loss unless the loss is excluded or limited under this coverage form."

¶ 7 Section (A)(5) of this provision, "Additional Coverages," contains a subsection (g), entitled "Business Income," which states:

"We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration'. The suspension must be caused by direct physical loss of or damage to covered property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss."

¶ 8 The Business Income provision defines the term "suspension" as:

"(a) The partial slowdown or complete cessation of your business activities; or

(b) That a part or all of the described premises is rendered untenantable if coverage for Business Income applies."

¶ 9 The policy defines Business Income as "Net Income *** that would have been earned or incurred if no physical loss or damage had occurred *** and [] [c]ontinuing necessary operating expenses incurred." The "Period of Restoration," is a period of time that:

"a. Begins immediately after the time of direct physical loss or damage for Business Income or Extra Expense coverage caused by or resulting from any covered Cause of Loss at the described premises; and

b. Ends on the earlier of:

(1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(2) The date when business is resumed at a new permanent location."

A "Period of Restoration" also includes "any increased period required to repair or reconstruct the property to comply with the minimum standard of, or compliance with any ordinance or law, in force at the time of loss, that regulates the construction or repair, or requires the tearing down of property."

¶ 10    Subsection (h) of the Additional Coverages provision defines "Extra Expense" as follows:

"We will pay necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to covered property at the described premises. The loss or damage must be caused or result from a Covered Cause of Loss."

Extra Expense are expenses incurred:

(a)     To avoid or minimize the suspension of business and to continue 'operations':

(i) At the described premises; or

(ii) At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

(b)     To minimize the suspension of business if you cannot continue 'operations'.

(c)     To:

(i) Repair or replace any property; or

(ii) Research, replace or restore the lost information on damaged 'valuable papers and records.' "

¶ 11    Subsection (k) of the Additional Coverages includes coverage entitled "Civil Authority," providing:

"When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

(1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within the area; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property."

This provision also states that "[t]he definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage."

¶ 12    The policy also provides contamination coverage under subsection (m) of the Additional Coverages provision. If operations are suspended due to "contamination," the policy states:

"(1) We will pay for your costs to clean and sanitize your premises, machinery and equipment, and expenses you incur to withdraw or recall products or merchandise from the market. ***

(2) We will also pay for the actual loss of Business Income and Extra Expense you sustain caused by

(a) 'Contamination' that results in an action by a public health or other governmental authority that prohibits access to the described premises or production of your product.

(b) 'Contamination threat'

(c) 'Publicity' resulting from the discovery or suspicion of 'contamination'."

This provision also states that "[c]overage for the actual loss of Business Income under this section will begin immediately upon the suspension of your business operations and will continue for a period not to exceed a total of three consecutive weeks after coverage begins." In addition, "[t]he definitions of Business Income and Extra Expense, contained in the Business Income and Extra Expense Additional Coverages section shall also apply to the additional coverages under this section." "Contamination" is defined as "a defect, deficiency, inadequacy or dangerous condition in your products, merchandise or premises." The policy defines "[p]ublicity" as "a publication or broadcast by the media, of the discovery or suspicion of 'contamination' at a described premise."

¶ 13     Finally, the Society policy contains an exclusion for loss or damage caused by the enforcement of an ordinance or law that regulated the use of any property. This exclusion states:

"We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

a. Ordinance Or Law

The enforcement of or compliance with any ordinance or law:

(1) Regulating the construction, use or repair of any property; ***

This exclusion, Ordinance Or Law, applies whether the loss results from:

(1) An ordinance or law that is enforced even if the property has not been damaged; or

(2) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property."

¶ 14    On April 28, 2020, plaintiffs filed their complaint for declaratory judgment, seeking a declaration of rights pursuant to the Society policy. Society filed its answer and affirmative defenses, as well as a countercomplaint against plaintiffs for declaratory judgment. On September 9, 2020, Society moved for judgment on the pleadings under section 2-615(e) of the Code (735 ILCS 5/2-615(e) (West 2020)). After briefing and oral argument, the circuit court entered an order granting Society's motion for judgment on the pleadings on August 24, 2021. This appeal followed.

¶ 15                                   ANALYSIS

¶ 16    Plaintiffs argue that the circuit court erred when it held that the pleadings failed to establish the existence of "direct physical loss of or damage to" their property under the Business Income and Extra Expense coverages of the policy. Plaintiffs also contend that the court erred in finding that their pleadings failed to establish the existence of coverage under the contamination and civil authority coverages of the policy. Finally, plaintiffs argue they properly pleaded a claim for bad faith denial of coverage.

¶ 17    Society responds that the circuit court's decision should be affirmed because there is no coverage under the policy. In addition, Society argues that even if plaintiffs properly pled a direct

physical loss or damage to their property, the policy's ordinance or law exclusion applies to preclude coverage.

¶ 18                                    Standard of Review

¶ 19    A court properly enters a judgment on the pleadings when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *H & M Commercial Driver Leasing, Inc. v. Fox Valley Containers, Inc.*, 209 Ill. 2d 52, 56 (2004). "Only those facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record may be considered." *Id.* At 56-57. "Moreover, all well-pleaded facts and all reasonable inferences from those facts are taken as true." *Id.* At 57. We review the entry of a judgment on the pleadings *de novo*. *Id.*

¶ 20    In construing the language of an insurance policy, our primary objective is to ascertain and give effect to the intent of the parties to the contract. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108 (1992). To determine the meaning of the policy's language and the parties' intent, we must construe the policy as a whole "with due regard to the risk undertaken, the subject matter that is insured[,] and the purposes of the entire contract." *Id.* If the policy terms are clear and unambiguous, we afford them their plain, ordinary, and popular meaning. *Id.* Conversely, if the language of the policy is ambiguous (*i.e.*, susceptible to more than one meaning), it is construed strictly against the insurer who drafted the policy and in favor of the insured. *Id.* At 108-09. We will not, however, "strain to find ambiguity in an insurance policy where none exists." *McKinney v. Allstate Insurance Co.*, 188 Ill. 2d 493, 497 (1999). The construction of an insurance policy is also a question of law that we review *de novo*. *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292-93 (2001).

¶ 21    Finally, this court can affirm the circuit court's decision on any basis in the record, regardless of whether the circuit court relied on those ground or its reasoning was correct. *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 97 (1995).

¶ 22    Before turning to the merits of plaintiffs' appeal, we must first address the significance of the type of insurance policy plaintiffs purchased, because they seem to both conflate and equalize property damage liability coverage and business interruption coverage. Considering the language of the policy at issue here, this is a distinction *with* a difference, and is dispositive to our analysis regarding the scope of coverage.

¶ 23    In *Image Dental, LLC v. Citizens Insurance Co. of America*, 543 F. Supp. 3d 582, 588 (N.D. Ill. 2021), the United States District Court for the Northern District of Illinois considered under Illinois law whether the insurer's policy covered the plaintiff's dental business losses arising from the COVID-19 pandemic. The court stated that, "[a]s a general matter, it is important to bear in mind what type of policy Image Dental purchased." *Id*. The plaintiff insured believed that it had purchased an "all risk" policy that covered "all damage from all sources unless specifically excluded." *Id*. However, the court, in finding that the plaintiff did not suffer a physical loss of or damage to property, specifically noted the difference between scope of coverage for property losses versus business interruption:

> "Image Dental did not buy 'business interruption insurance,' writ large. That is, Image Dental did not purchase a policy that covers anything and everything that interrupts its business. It purchased a specific type of policy that covered a specific type of risk. The policy covered business losses in limited circumstances, and those circumstances do not include a loss of business without a physical harm." *Id.*

¶ 24 Further bolstering this distinction, the court noted that the policy was "chockfull of textual clues that there must be a loss of or damage to a thing, meaning a tangible object," considering, for example, the heading "PROPERTY." *Id.* In short, the policy at issue in *Image Dental* covered *property* loss, not business interruption loss. Pertinent here, the court stated that "[t]he scope-of-coverage provision builds on that clue, and requires a physical problem with a physical object. *** Not just any loss or damage will do. It must be a 'physical' loss or damage." *Id.* See also 10A Couch on Insurance § 148:46 (Steven Plitt *et al.* eds., 3d ed. Nov. 2021 update) ("The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.").

¶ 25 The plaintiffs here also purchased commercial property insurance, the purpose of which is to protect insureds from physical loss of or damage to property, such as the occurrence of a tornado or fire. This type of policy limits coverage for business losses and generally does not insure business interruption without the presence of physical loss. See *Sandy Point Dental, P.C. v. Cincinnati Insurance Co.*, 20 F. 4th 327, 331-34 (7th Cir. 2021) (finding a mere loss of use of property, without any physical alteration, is not "direct physical loss or damage," and therefore does not qualify as a covered case of loss). With these scope-of-coverage principles in mind, we turn to plaintiffs' arguments.

¶ 26 Sufficient Pleading of Coverage for Business Income and Extra Expense

¶ 27 Plaintiffs first argue that the circuit court mistakenly concluded that their complaint fails to allege the existence of a "direct loss of or damage to" property regarding the Business Income and Extra Expense provisions. Plaintiffs point to the court's finding that if the loss was "not able

to be seen with the naked eye," referring to COVID-19, then the virus was incapable of causing "direct physical loss of or damage to" property. Plaintiffs contend the court failed to give credence to their reasonable interpretation of the operative language of the Society policy and precedent holding that other causes of loss that are similarly incapable of being seen with the naked eye, such as asbestos, ammonia, or carbon monoxide, are sufficient to cause direct physical loss of or damage to property.

¶ 28    Here, both the Business Income and Extra Expense provisions require a "direct physical loss of or damage to covered property" to trigger coverage under the policy. Therefore, we must determine whether plaintiffs properly pled that a "direct loss of or damage to covered property" occurred. The policy does not define what constitutes a "direct loss of or damage to covered property." Rather, the policy defines "Covered Cause of Loss" as "Direct Physical Loss unless the loss is excluded or limited under this coverage form."

¶ 29    When plaintiffs filed their initial brief, Illinois courts had yet to rule on whether COVID-19-related limitations on plaintiffs' use of their properties constituted a physical loss. Recently, however, Illinois courts have issued decisions determining that a COVID-19-related loss of use does not qualify as a physical loss. Indeed, *Sweet Berry Café, Inc. v. Society Insurance, Inc.*, 2022 IL App (2d) 210088, is directly on point and involves the exact same policy language as this case.

¶ 30    In *Sweet Berry Café*, the plaintiff insured sought coverage under a "Businessowners Policy" it purchased from Society, the defendant insurer, for losses resulting from restricted operations during the pandemic. Similar to plaintiffs here, the plaintiff insured sought coverage under the policy's "Business Income," "Extra Expense," and "Civil Authority" provisions, alleging that it sustained "direct physical loss of or damage to" property at its premises. In addition, the plaintiff alleged that it incurred covered losses resulting from Governor Pritzker's executive

orders. Society filed a countercomplaint for declaratory judgment. The circuit court granted Society's motion for judgment on the pleadings.

¶ 31    On appeal, the plaintiff argued that the Society policy covered its loss because the virus was the root cause of the restricted use of its premises and, thus, its loss of income. The plaintiff also contended that the circuit court erred by taking judicial notice that the virus had not rendered other businesses unusable and that the virus is easily destroyed. The plaintiff argued that the court was required to accept as true its allegations that the virus can remain suspended in the air for hours and remains active on surfaces for up to 72 hours. In short, the plaintiff argued that the court considered issues beyond the pleadings regarding the virus that were not matters of common knowledge or capable of verification, and because the facts were disputed, granting a motion for judgment on the pleadings was improper.

¶ 32    The *Sweet Berry Café* court disagreed with the insured's analysis. It concluded that "the policy unambiguously requires a physical alteration or substantial dispossession, not merely loss of use, which is what [the plaintiff] sufficiently pleaded it experienced." *Id*. ¶ 39. In reaching this conclusion, the court considered whether " 'physical loss' unambiguously requires that the deprivation be caused by a material thing," which would rule out economic losses resulting from the plaintiff's inability to fully operate its business. *Id*. ¶ 40. The court analyzed the dictionary definitions of "physical loss," "direct," and whether the term "physical" modified "loss," because the circuit court ignored the term "physical" and focused solely on "loss." *Id*.

¶ 33    Our supreme court provided guidance on this issue in *Eljer*, 197 Ill. 2d at 287, interpreting the provision, "physical injury to tangible property," consistently with the dictionary definition of "physical," meaning, " 'having material existence: perceptible especially through the senses and subject to the laws of nature' and 'of or relating to material things.' " *Sweet Berry Café, Inc.*, 2022

IL App (2d) 210088, ¶¶ 40-41 (quoting Merriam-Webster's Online Dictionary, www.merriam-webster.com/dictionary/physical (last visited Mar. 2, 2021)). *Eljer* held that " 'physical injury to tangible property' was not ambiguous and that tangible property suffers 'physical' injury when that property is 'altered in appearance, shape, color or in other material dimension.' " *Sweet Berry Café, Inc.*, 2022 IL App (2d) 210088, ¶ 41 (quoting *Eljer*, 197 Ill. 2d at 301). Further, "[t]angible property does not experience physical injury 'if that property suffers intangible damage, such as diminution in value as a result from the failure of a component *** to function as promised.' " *Id.* (quoting *Eljer*, 197 Ill. 2d at 301-02).

¶ 34    The *Sweet Berry Café* court concluded that the insurance policy did not cover losses due to the virus's presence at and around the plaintiff's premises and due to the executive orders instituted by the governor. The court reasoned:

> "The fact that the virus was present at [the plaintiff's] premises, an allegation we must accept as true, did not result in or cause 'direct physical loss of or damage to' the property. This is because no property needed to be repaired or replaced." *Sweet Berry Café, Inc.*, 2022 IL App (2d) 210088, ¶ 43.

¶ 35    Plaintiffs here similarly alleged in their complaint that "[i]t is likely that SARS-CoV-2 particles have been physically present at Plaintiffs' premises and on surfaces and items of personal property located at Plaintiffs' premises described in the Policy during the time the policy was in effect," and that they "sustained direct physical loss and damage to items of property located at their premises and direct physical loss and damage to their premises described in the Policy as a result of the presence of SARS-CoV-2 particles and/or the Pandemic." Plaintiffs claimed their operations were suspended due to the foregoing physical loss and damage to physical property on their premises. However, to demonstrate "physical loss," plaintiffs were required to allege a

"physical alteration to [their] property," and more specifically, "an alteration in appearance, shape, color or in other material dimension," but they failed to do so. *Eljer*, 197 Ill. 2d at 301; see also *Lee v. State Farm Fire and Casualty Co.*, 2022 IL App (1st) 210105, ¶ 19 (finding that "direct physical loss" requires a physical alteration to property under *Eljer*, because it is the plain, ordinary, and popular meaning given to that phrase by the average, ordinary, normal, reasonable person).

¶ 36    Like *Sweet Berry Café, Lee*, and many of the courts that have addressed the same coverage issue presented here, we conclude that plaintiffs' business interruption claim resulting from institution of the COVID-19 executive orders constituted an economic loss and not a "physical loss" to covered property required to trigger coverage under the policy. As discussed in *Sweet Berry Café* and *Lee*, without an allegation of a change to the physical nature of the existing property, plaintiffs' allegations are insufficient to establish a physical loss. Furthermore, plaintiffs' complaint likewise failed to demonstrate a physical loss because they did not allege that the restaurants and taverns at issue needed to be physically repaired or replaced. See *Sweet Berry Café*, 2022 IL App (1st) 210088, ¶ 43. Indeed, "the mere presence of the virus on surfaces does not constitute 'physical loss of or damage to property' because COVID-19 does not physically alter the appearance, shape, floor, structure, or other material dimension of the property." *ABW Development, LLC v. Continental Casualty Co.*, 2022 IL App (1st) 210930, ¶ 35. The Seventh Circuit has explained:

"Even if the virus was present and physically attached itself to [the plaintiff's] premises, [the plaintiff] does not allege that the virus altered the physical structures to which it attached, and there is no reason to think that it could have done so. While the impact of the virus on the world over the last year and a half can hardly be

16

overstated, its impact on physical property is inconsequential: deadly or not, it may be wiped off surfaces using ordinary cleaning materials, and it disintegrates on its own in a matter of days. We thus find no reversible error in the district court's denial of [the plaintiff's] motion for leave to amend its complaint." (Emphasis omitted.) *Sandy Point Dental*, 20 F. 4th at 335.

¶ 37 The *Sandy Point* court also addressed plaintiffs' reliance on cases arguing physical loss that involved the presence of asbestos, noxious gases, termite infestations, or other health-threatening products causing intangible economic loss in the form of diminished market value. See 20 F. 4th at 333. The court explained that cases involving gas infiltration, for example, without any physical alteration, resulted to more than a diminished ability to use the property. Instead, "[i]t was so severe that it led to complete dispossession – something easily characterized as a 'direct physical loss,' " in which the contamination made the premises " 'uninhabitable.' " *Id*. at 334. It distinguished the gas infiltration cases, because the COVID-19 executive orders required a partial limitation on the preferred use of the premises. *Id*. The court concluded that "[w]ithout any physical alteration to accompany it, this partial loss of use does not amount to a 'direct physical loss.' " *Id.*

¶ 38 Plaintiffs rely on a handful of federal district court cases, including *In re Society Insurance Co. COVID-19 Business Interruption Protection Insurance Litigation*, 521 F. Supp. 3d 729 (N.D. Ill. 2021) and *Studio 417, Inc. v. Cincinnati Insurance Co.*, 478 F. Supp. 3d 794 (W.D. Mo. 2020), which have interpreted similar policy language to cover losses due to the COVID-19 virus or government-imposed shut down orders. In these cases, as here, the policies did not contain a specific exclusion of coverage for losses due to a virus or pandemic. These cases held that "even absent a physical alteration, a physical loss may occur when the property is uninhabitable or

unusable for its intended purpose." *Studio 417, Inc. v. Cincinnati Insurance Co.*, 478 F. Supp. 3d at 801. These courts found that the focus on an actual physical alteration ignores the coverage for a physical loss. *Id.* at 800. However, the court in *In re Society Insurance*, which analyzed policy language similar to this case, did not consider the Illinois Supreme Court's interpretation of the term "physical" in *Eljer*, did not consult the dictionary to analyze the terms involved and how they read together, and instead, chose to focus on and separate the term "loss," rather than the terms preceding it (direct and physical). 521 F. Supp. 3d at 741-743. Current Illinois precedent rejects the interpretation and analysis of these cases and corresponding federal appellate courts in the same circuit have spoken to the contrary. See *Sandy Point Dental*, 20 F. 4th at 335 (finding the decision in *Studio 417* non-binding); see also *Sweet Berry Café, Inc.*, 2022 IL App (2d) 210088, ¶ 46 (finding that "[l]oss of use without 'physical loss' is not covered").

¶ 39    We elect to follow Illinois courts and the Seventh Circuit (interpreting Illinois law) because we find they are directly on point and controlling on the issue presented in this appeal. *Sweet Berry Café, Inc.*, 2022 IL App (2d) 210088, ¶ 43; *Lee*, 2022 IL App (1st) 210105, ¶ 19; see also *Sandy Point Dental*, 20 F. 4th at 335. Accordingly, plaintiffs have alleged no physical alteration of its property that would bring their alleged losses within the Business Income and Extra Expense Coverage.

¶ 40                    Sufficient Pleading of Coverage for Civil Authority

¶ 41    Next, we address plaintiffs' claim for coverage under the Civil Authority provision. This provision states that "[t]he definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage." Accordingly, coverage for Civil Authority likewise "must be caused by direct physical loss of or damage to covered property at the described premises."

¶ 42    As with Business Income and Extra Expense coverage, which we examined above, the trigger for civil authority coverage is "direct physical loss of or damage to" property "other than property at the described premises," meaning the property suffering the loss or damage is that of third parties rather than plaintiffs' property.

¶ 43    Just as plaintiffs failed to plead sufficient factual allegations to support their conclusion that the COVID-19 virus caused direct physical loss to their property, they also failed to allege any facts that would indicate that the virus caused direct physical loss or damage to any other property. They simply alleged "[p]roperties and premises throughout Illinois contain the presence of SARS-CoV-2 particles on surfaces and items of property," and that they "sustained loss and damage as a direct and proximate result of the orders issued by civil authorities." The allegation that other third-party locations contained the presence of the COVID-19 virus particles is insufficient to allege direct physical loss or damage because, as explained above, the mere presence of the COVID-19 virus does not constitute physical loss or damage. Therefore, under the terms of the policy and supporting Illinois law, the Civil Authority provision does not apply here.

¶ 44                    Sufficient Pleading of Coverage for Contamination

¶ 45    Plaintiffs next contend that the contamination provision applies because "contamination" resulted in action by a governmental authority prohibiting access to plaintiffs' premises. In their complaint, plaintiffs alleged that "SARS-CoV-2 contamination resulted in governmental authorities prohibiting access to Plaintiffs' premises." Although we must take this allegation as true, we may also take judicial notice of Governor Pritzker's executive orders, which expressly provided that restaurants could continue to operate for purposes of preparing and serving food for consumption off-premises. The intent of the executive orders was "to ensure that the maximum number of people self-isolate in their places of residence to the maximum extent feasible, while

enabling essential services to continue, to slow the spread of COVID-19 to the greatest extent possible." The governor issued subsequent executive orders that either disallowed on-premises dining, permitted outdoor on-premises dining, or reduced the capacity allowed for indoor dining.

¶ 46    In short, contrary to plaintiffs' allegations, the executive orders expressly did not prohibit access to plaintiffs' premises and specifically designated their establishments as "essential services." Limiting the use of the premises does not constitute a prohibition of access to those premises. Furthermore, plaintiffs have failed to plead that the contamination included a "deficiency, inadequacy or dangerous condition in your *** premises." They simply concluded that the executive orders prohibited access to their premises without pleading supporting facts. In reviewing a ruling on a motion for judgment on the pleadings, we may disregard all conclusory allegations and surplusage, and construe the evidence strictly against the movant. See *Parkway Bank & Trust v. Meseljevic*, 406 Ill. App. 3d 435, 442 (2010). Indeed, the governmental orders make clear that the applicable businesses' operations were not being suspended or restricted due to contamination within them, but rather due to the threat of transmission of the virus from persons who may congregate in such premises.

¶ 47    Further, plaintiffs claim that they suffered losses resulting from publicity from the discovery or suspicion of contamination is likewise inapplicable. Under the policy, "publicity" is defined as "a publication or broadcast by the media, of the discovery or suspicion of 'contamination' *at a described premise*." (Emphasis added.) Plaintiffs failed to plead in their complaint that they suffered losses due to publicity of contamination at any of their described premises, other than another conclusory allegation that "[i]t is likely that SARS-CoV-2 particles have been physically present at Plaintiffs' premises and on surfaces and items of personal property located at Plaintiffs' premises described in the Policy during the time the policy was in effect."

20

This blanket allegation lacks any description whatsoever of a broadcast or media publication of contamination at a *described premise* and, therefore, is insufficient to plead a loss from publicity due to contamination from the virus. Accordingly, we find plaintiffs have not sufficiently pled a claim for coverage under the Contamination provision.

¶ 48                                        Ordinance or Law Exclusion

¶ 49     Because we conclude that there is no coverage under the Additional Coverages provisions, we need not consider whether any applicable coverage would be excluded under the ordinance or law exclusion provision in the Society policy.

¶ 50                                        Bad Faith Claim

¶ 51     Finally, plaintiffs contend that the circuit court improperly dismissed their claim for bad faith denial of coverage pursuant to section 155 of the Insurance Code (215 ILCS 5/155 (West 2020)). Section 155 provides "an extracontractual remedy intended to make suits by policyholders economically feasible and punish insurance companies for misconduct." *McGee v. State Farm Fire & Casualty Co.*, 315 Ill. App. 3d 673, 681 (2000). Thus, the key question in a section 155 claim is "whether an insurer's conduct is vexatious and unreasonable." *Id*. "To state a claim under section 155," the insured must plead "a modicum of factual support" and "cannot merely allege that the insurer's conduct was vexatious and unreasonable." *Id*. The court must consider the totality of the circumstances "when deciding whether an insurer's conduct is vexatious and unreasonable, including the insurer's attitude, whether the insured was forced to sue to recover and whether the insured was deprived of the use of his property." *Baxter International, Inc. v. American Guarantee & Liability Insurance Co.*, 369 Ill. App. 3d 700, 710 (2006).

¶ 52     Plaintiffs' sole argument on this issue is that the circuit court improperly dismissed their complaint based on an erroneous conclusion that they had failed to allege coverage under the

policy. We have found that the circuit court properly determined plaintiffs are not covered under the Society policy and, therefore, their bad faith claim fails as well. The insurer cannot act vexatiously or unreasonably with respect to the claim when no coverage is owed. We find the circuit court properly ruled on this issue.

¶ 53                                    CONCLUSION

¶ 54    In sum, the partial loss of use of plaintiffs' establishments, without any physical alteration to the property or a deprivation of use or access so substantial as to constitute a physical dispossession was not sufficient to allege a "direct physical loss of or damage to" their property to trigger coverage under Society's policy.

¶ 55    We acknowledge the immense challenges facing restaurants, taverns, and other hospitality-service providers during the COVID-19 pandemic. However, we must construe the insurance contract into which the parties entered and hold them to their agreement.

¶ 56    We affirm the judgment of the circuit court of Cook County.

¶ 57    Affirmed.