2024 IL App (1st) 230732-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

FIRST DIVISION
March 25, 2024

No. 1-23-0732

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| TRANSFORM HOLDCO LLC, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LLOYD'S UNDERWRITER SYNDICATE NO. 318 | ) | |
| MSP, NEON SYNDICATE 2468, TOKIO MARINE | ) | |
| AMERICAN INSURANCE COMPANY, IRONSHORE | ) | Appeal from the |
| SPECIALTY INSURANCE COMPANY, ZURICH | ) | Circuit Court of |
| AMERICAN INSURANCE COMPANY, AMERICAN | ) | Cook County. |
| INTERNATIONAL GROUP UK LIMITED, LLOYD'S | ) | |
| UNDERWRITER SYNDICATE NO. 2488 CGM, | ) | No. 22 CH 5523 |
| LLOYD'S UNDERWRITER SYNDICATE NO. 2987 | ) | |
| BRIT, ENDURANCE WORLDWIDE INSURANCE | ) | The Honorable |
| LTD., LLOYD'S UNDERWRITER SYNDICATE NO. | ) | Anna M. Loftus, |
| 5151 ENH, LLOYD'S UNDERWRITER SYNDICATE | ) | Judge Presiding. |
| NO. 1414 ASC, LLOYD'S UNDERWRITER | ) | |
| SYNDICATE NO. 1183 TAL, ACE AMERICAN | ) | |
| INSURANCE COMPANY, WESTPORT INSURANCE | ) | |
| CORPORATION, STARR SURPLUS LINES | ) | |
| INSURANCE COMPANY, CANOPIUS INSURANCE | ) | |
| SERVICES, and EVANSTON INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Lavin and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The appellate court affirms the trial court's dismissal of plaintiff's complaint seeking insurance coverage for business interruption losses as a result of the presence at its premises of the virus that causes COVID-19, as allegations did not involve "direct physical loss or damage" to insured property necessary to trigger coverage.

¶ 2    The plaintiff, Transform Holdco LLC, appeals the trial court's dismissal of its complaint, which sought a declaratory judgment that it was entitled, under commercial property policies insuring it against "all risk of direct physical loss or damage" to insured property, to indemnity for business interruption losses and expenses as a result of the presence at its premises of SARS-CoV-2, the virus that causes COVID-19. The plaintiff also appeals the trial court's dismissal of defendant Westport Insurance Corporation (Westport) based on a provision of its policy that vested exclusive jurisdiction in the courts of New York. We affirm the judgment of the trial court.

¶ 3                                  I. BACKGROUND

¶ 4    The plaintiff is the operator of Sears Roebuck & Co. and Kmart retail stores. The defendants are 17 insurance companies that comprised the plaintiff's commercial property insurance program for the period of May 1, 2019 to May 1, 2020. For purposes of this appeal, there is no material difference in policy language among the various policies at issue. Each defendant's policy provides in pertinent part that it "insures against all risk of direct physical loss or damage occurring during the policy term to property insured by this policy," subject to certain exclusions.

¶ 5    On June 8, 2022, the plaintiff filed a complaint for declaratory judgment against the defendants seeking to establish insurance coverage for losses sustained in the operation of its business related to the COVID-19 pandemic. It sought indemnity under various types of coverages available for business-interruption related losses resulting from "direct physical loss or damage"

to property.[1] Generally speaking, the complaint alleged that the plaintiff was forced to limit its retail operations to providing only essential services to the public and that it incurred significant costs to alter its properties to control foot traffic and "to constantly remediate its properties to minimize the risk of transmission through fomites, droplets, droplet nuclei, and aerosols." It alleged that these losses were caused both by the physical presence at its properties of SARS-CoV-2, as well as by government orders issued in response to the pandemic directing people to stay at home and limiting non-essential retail business operations.[2]

¶ 6    With respect to the issue of direct physical loss or damage to insured property caused by the presence of the virus at its stores, the complaint included the following allegations:

"34. *** The scientific community has confirmed that SARS-CoV-2 virions and COVID-19 alter the conditions of properties, in that the premises are physically damaged and no longer safe for normal use. In this regard, SARS-CoV-2 virions and COVID-19 cause physical loss of and damage to properties.

35. This physical loss and damage to property results because SARS-CoV-2 virions have a corporeal existence and are contained in respiratory droplets. Once expelled from infected individuals, these droplets adhere to surfaces and objects and physically change these once safe surfaces into 'fomites.' Fomites are objects, previously safe to touch, that now serve as a vehicle for transmissions of SARS-CoV-2 virions. Fomites physically change the air, airspaces, property, and property surfaces by becoming a part of the air or property. This physical change makes contact with affected surfaces unsafe and potentially

_____

[1] There are minor variations in policy language among the different coverages relied upon, but there is no dispute that each requires "direct physical loss or damage" to property for coverage to exist.
[2] The effect of the government orders on the availability of coverage is not raised on appeal, and accordingly we omit further discussion of this aspect of the plaintiff's claim.

deadly. In turn, the physical change of the affected surface or material causes tangible and severe property loss and damage. The properties are dangerous and cannot be used unless and until the COVID-19-related conditions are fully rectified.

36. Medical and scientific research also has established that SARS-CoV-2 virions and COVID-19 spread through indoor airborne transmission. When individuals carrying SARS-CoV-2 virions talk, cough, or sneeze, they expel aerosolized droplet nuclei that remain in the air, accumulate in buildings, and—like dangerous fumes—make the premises unsafe and unusable.

37. Airborne particles likewise are known to have spread into a facility's heating and ventilation ('HVAC') system, leading to transmission of SARS-CoV-2 virions from person to person. Ambient air that was previously safe to breathe, but can no longer be safely breathed due to SARS-CoV-2 aerosols, has undergone a physical alteration. The Environmental Protection Agency has recommended that facilities make improvements to their ventilation and HVAC systems by, for example, increasing ventilation with outdoor air and air filtration.

38. Fomites, droplets, droplet nuclei, and aerosols containing SARS-CoV-2 virions are not theoretical, informational, or incorporeal, but rather are dangerous physical objects that have a tangible existence. Their presence within an insured property causes physical loss of and damage to property by necessitating remedial measures that include, without limitation, repairing or replacing air filtration systems, remodeling and reconfiguring physical spaces, removal of fomites by certified technicians, and other measures."

¶ 7    The defendants filed a motion to dismiss the complaint under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2022)), arguing that controlling Illinois case law had

established that the presence at a premises of the virus that causes COVID-19 does not constitute "direct physical loss or damage to property" for purposes of insurance policy provisions that incorporate such a requirement. See *ABW Development, LLC v. Continental Casualty Co.*, 2022 IL App (1st) 210930, ¶ 30; *Sweet Berry Café, Inc. v. Society Insurance, Inc.*, 2022 IL App (2d) 210088, ¶ 43. They further argued that the allegations set forth above about how the virus causes physical damage at a microscopic level were insufficient to amount to an allegation of direct physical loss or damage to property, including because the virus could be easily removed from surfaces by cleaning and did not require any property to be repaired or replaced.

¶ 8        The trial court granted the motion to dismiss, finding that the complaint failed to allege physical injury or damage to property as required to trigger coverage under the policies and controlling case law. The court reasoned that the gist of the allegations was that the virus adheres or bonds itself to the surfaces with which it comes into contact, thereby making the surface capable of infecting people that touched it. However, the fact remained that the surface itself was not altered, as the virus could be removed with disinfectants and otherwise dies naturally within hours or days. Once the virus is removed, the surface exists unchanged from its previous state. Based on this reasoning, the trial court therefore dismissed the plaintiff's complaint with prejudice. It also granted a separate motion to dismiss by defendant Westport on the grounds that its policy required suit to be brought against it only in New York. The plaintiff now appeals these rulings.

¶ 9                                                    II. ANALYSIS

¶ 10        A motion to dismiss under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2022)) challenges the legal sufficiency of a complaint and asserts that the plaintiff has failed to state a cause of action. *Village of Kirkland v. Kirkland Properties Holdings Co.*, 2023 IL 128612, ¶ 44. In ruling on such a motion, a court must accept as true all well-pleaded facts in the

complaint, along with any reasonable inferences that may arise from them. *Kanerva v. Weems*, 2014 IL 115811, ¶ 33. The critical inquiry is whether the complaint's allegations, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted. *Id.* A cause of action should not be dismissed under section 2-615 unless it is clearly apparent from the face of the pleadings that no set of facts can be proven that would entitle the plaintiff to recovery. *Id.* The standard of review is *de novo. Id.*

¶ 11    As explained below, the issue presented in this appeal is a familiar one: whether the losses allegedly suffered by the plaintiff's business in the COVID-19 pandemic result from "direct physical loss or damage *** to property," under policies issued by the defendants insuring against such risk. Nevertheless, we remain mindful of the plaintiff's point that every coverage case is dependent on its own facts, including the exact terms of the policy at issue and the specific allegations of the particular complaint. See *Pekin Insurance Co. v. Hallmark Homes, L.L.C.*, 392 Ill. App. 3d 589, 596 (2009). We apply the general rules of contract interpretation to the interpretation of an insurance policy. *Sproull v. State Farm Casualty Co.*, 2021 IL 126446, ¶ 19. In interpreting the terms of an insurance policy, our primary objective is to ascertain and give effect to the intent of the parties, as expressed in the policy language. *Id.* The construction must be a natural and reasonable one. *Id.* Undefined terms are given their plain, ordinary, and popular meaning, *i.e.*, they are construed in reference to the average and reasonable person. *Id.* The interpretation of insurance policy provisions and the determination of parties' rights and obligations thereunder are questions of law, subject to *de novo* review. *Federal Insurance Co. v. Binney & Smith Inc.*, 393 Ill. App. 3d 277, 282 (2009).

¶ 12    Since the onset of the COVID-19 pandemic, our court has issued over a dozen decisions in which we have held, consistent with nearly every court nationwide, that commercial property

insurance policies do not cover economic losses sustained by businesses during the COVID-19 pandemic, despite policyholders' attempts to attribute their losses to "physical loss," "physical damage" from the presence of SARS-CoV-2 at their premises, or from their compliance with governmental orders. *Oak Park Prosthodontics, Ltd. v. Twin City Fire Insurance Co.*, 2023 IL App (1st) 220563-U, ¶ 24. We have stated that "it is well established in this jurisdiction that a presence of the SARS-CoV-2 virus or the issuance of government orders to modify business practices, even to the point of closure, does not cause physical loss of or damage to tangible property." *Id.*

¶ 13    In *ABW Development*, this court first held that the presence at a premises of the virus that causes COVID-19 did not constitute " 'direct physical loss of or damage to Covered Property' " for purposes of an insurance policy provision that conditions coverage on such loss or damage. *ABW Development*, 2022 IL App (1st) 210930, ¶ 30. In doing so, we looked to the definition of "physical" injury used by the supreme court in *Traveler's Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 312 (2001), and concluded that this policy language means "that property has been 'alter[ed] in appearance, shape, color or in other material dimension.' " *ABW Development*, 2022 IL App (1st) 210930, ¶¶ 29-30 (quoting *Eljer*, 197 Ill. 2d at 301). We noted that the second district had interpreted nearly identical policy language and held that " 'neither the presence of the virus at [the plaintiff]'s premises nor the pandemic-triggered executive orders that barred in-person dining at restaurants constitute[d] "direct physical loss of or damage to" [the plaintiff]'s property.' " *Id.* ¶ 33 (quoting *Sweet Berry Café*, 2022 IL App (2d) 210088, ¶ 1). We also noted that a panel of the first district had reached a similar holding that losses attributable to government closure orders did not involve a " 'physical loss' to covered property" to trigger business interruption coverage requiring the same. *Id.* (citing *Lee v. State Farm Fire & Casualty Co.*, 2022 IL App (1st) 210105, ¶ 20). And we noted that our holding was consistent with the vast majority

of authority from other jurisdictions to decide the issue. *Id.* ¶ 32 (citing, *inter alia*, *Sandy Point Dental P.C. v. Cincinnati Insurance Co.*, 20 F.4th 327, 335 (7th Cir. 2021) (applying Illinois law)).

¶ 14    Although we found in *ABW Development* that the plaintiff's complaint did not contain facts that would support its allegation that the virus caused physical loss or damage to the property, we went to explain as follows:

> "Nonetheless, even assuming the COVID-19 virus was present at the premises, the mere presence of the virus on surfaces does not constitute 'physical loss of or damage to property' because COVID-19 does not physically alter the appearance, shape, color, structure, or other material dimension of the property. As the Seventh Circuit explained:
>
>> 'Even if the virus was present and physically attached itself to [the plaintiff]'s premises, [the plaintiff] does not allege that the virus altered the physical structures to which it attached, and there is no reason to think that it could have done so. While the impact of the virus on the world over the last year and a half can hardly be overstated, its impact on physical property is inconsequential: deadly or not, it may be wiped off surfaces using ordinary cleaning materials, and it disintegrates on its own in a matter of days. We thus find no reversible error in the district court's denial of [the plaintiff]'s motion for leave to amend its complaint.' (Emphases omitted.) *Sandy Point Dental*, 20 F.4th at 335." *ABW Development*, 2022 IL App (1st) 210930, ¶ 35.

¶ 15    We have continued to apply the above holding in rejecting insureds' arguments that the actual presence of the virus at a premises caused physical loss or damage to property. We have also since followed the lead of the second district and recognized that judicial notice may be taken of the fact that the virus may be easily removed from surfaces by regular cleaning methods. See *Bottleneck*

*Management, Inc. v. Zurich American Insurance Co.*, 2022 IL App (1st) 211462-U, ¶ 22 (citing *Sweet Berry Café*, 2022 IL App (2d) 210088, ¶ 43). Our most recent unpublished order addressing this issue reviewed the state of the law and concluded with the following summary:

> "Thus, it is clear that under Illinois law, in order for a policyholder to trigger coverage under policy language requiring 'physical loss of or damage to property' the policyholder must sufficiently allege facts to show some damage of a physical nature, such that the property has been altered in appearance, shape, color, or in other material dimension, such that the property needs to be repaired, rebuilt, or replaced. It is also clear that particles of the COVID-19 virus, because of their ephemeral and easily remediated nature, do not physically alter property." *Stats LLC v. Continental Insurance Co.*, 2023 IL App (1st) 220936-U, ¶ 34.

¶ 16    Against this backdrop, the plaintiff argues that its claim is distinguishable from prior Illinois cases that have involved this issue and that therefore the trial court erred in granting the defendants' motion to dismiss. The principal basis of its argument is that the instant complaint, specifically paragraphs 34-38 as set forth above, includes well-pled factual allegations that the presence of SARS-CoV-2 on the surfaces and in the air of the plaintiff's stores constitute physical loss or damage to property. In summary, the key allegations relied upon are that SARS-CoV-2 virions are contained in respiratory droplets expelled from infected individuals that adhere to surfaces and physically change those surfaces into "fomites." Fomites physically change the air and property surfaces by becoming part of the air or property, and this physical change renders contact with affected surfaces unsafe and potentially deadly. Such properties are dangerous and cannot be used until the COVID-19 related conditions are fully rectified. The presence of fomites, droplets, droplet nuclei, and aerosols containing SARS-CoV-2 virions necessitates remedial measures that

include repair or replacing air filtration systems, remodeling and reconfiguring of physical spaces, and removal of fomites by certified technicians. Because the plaintiff's retail stores are open to the public, its properties are constantly being physically altered by SARS-CoV-2 virions and rendered unsafe and unusable. Due to the widespread and highly transmissible nature of the virus to affect physical property, the plaintiff was forced to cease much of its operations and was limited to providing only essential services. It also incurred significant costs to alter its properties to control the amount of foot traffic through its properties and to constantly remediate its properties to minimize the risk of transmission through fomites, droplets, droplet nuclei, and aerosols.

¶ 17    The plaintiff argues that the trial court erred by disregarding the truth of these well-pled allegations and instead making a factual finding that surfaces at the plaintiff's stores remained unaltered due to the ability to remove the virus with disinfectants or to the natural death of the virus within hours or days. The plaintiff further argues that the adequacy of the above allegations distinguishes this case from other cases that were dismissed because they failed to allege (1) that the virus was present on covered property, (2) that the virus altered covered property, or (3) that any repair or remediation was necessitated due to physical damage to property from the virus.

¶ 18    We reject the plaintiff's argument that the allegations of its complaint are sufficient to overcome the holding of *ABW Development* that the presence of SARS-CoV-2 on surfaces does not constitute "physical loss of or damage" to property because it does not physically alter the appearance, shape, color, structure, or other material dimension of the property, due to the virus' ephemeral existence and the ease with which it may be removed from surfaces by cleaning. *ABW Development*, 2022 IL App (1st) 210930, ¶ 35.

¶ 19    This is not the first case to involve a complaint with allegations that SARS-CoV-2 causes physical damage at a microscopic level to property with which it comes into contact. In *Stats LLC*,

the complaint included allegations of a similar nature about the virus' chemical properties and the reactions that occur when it lands on surfaces; we rejected the argument that this amounted to an allegation of physical loss or damage, as it is "well-established that whatever chemical reactions occur when particles of the virus land on surfaces, it does not materially alter the property." *Stats LLC*, 2023 IL App (1st) 220936-U, ¶ 36 n.2.

¶ 20     In *Brown Jug, Inc. v. Cincinnati Insurance Co.*, 27 F.4th 398, 404 (6th Cir. 2022), the court of appeals addressed the adequacy of a complaint with similar allegations that "when droplets containing the virus land on surfaces, they transform that which they touch into dangerous 'fomites,' " which are inanimate objects that may carry and spread infectious agents. The court reasoned that this allegation is not alleging harm to property; instead, the harm posed is to humans. *Id.* Other courts have reached similar conclusions. See *e.g.*, *Tapestry, Inc. v. Factory Mutual Insurance Co.*, 286 A.3d 1044, 1060 (Md. 2022) (allegations that virus altered objects to become fomites did not constitute damage to property in absence of a physical or structural alteration of the property); *Cinemark Holdings, Inc. v. Factory Mutual Insurance Co.*, No. 4:21-cv-11, 2023 WL 2588548, *7-8 (E.D. Tex. Mar. 21, 2023) (scientific evidence that virus particles entered plaintiff's property and transformed its surfaces into infectious fomites did not constitute harm to property, and repair and remediation efforts were intended to protect people, not property); accord *Starr Surplus Lines Insurance Co. v. Eighth Judicial District Court*, 535 P.3d 254, 264 (Nev. 2023) ("evidence that the virus can spread via harmful 'fomites' once it lands on the surface of property *** does not indicate that the property was actually harmed," as fomite-based transmission typifies a way the virus poses a health risk to humans, as opposed to damage to property).

¶ 21     The allegations of the instant complaint warrant the same conclusion. The allegations that SARS-CoV-2 virions physically change surfaces into fomites with which contact is unsafe or

potentially deadly allege a risk of harm *to humans*; these allegations are not alleging a direct physical effect *on property* that can be reasonably characterized as loss or damage to it. Remediation efforts were needed because the number of infected people coming through the plaintiff's stores meant that its properties were "constantly be[ing] physically altered and affected by SARS-CoV-2 virions," not because surfaces once changed into fomites remained in that state for more than a short time. Ultimately, we find the plaintiff's efforts to plead around the ephemeral nature of the virus, the ease with which it can be cleaned from surfaces, and its effect on property as opposed to humans to be unavailing. In sum, our holding that the presence of the SARS-CoV-2 virus does not cause physical loss of or damage to property applies with equal force to the allegations of the present complaint. See *ABW Development*, 2022 IL App (1st) 210930, ¶ 35; *Oak Park Prosthodontics*, 2023 IL App (1st) 220563-U, ¶ 24.

¶ 22 The plaintiff's second principal argument urges us to find that "direct physical loss or damage" to property is alleged here by rejecting prior Illinois cases interpreting this phrase to mean "that property has been 'alter[ed] in appearance, shape, color or in other material dimension' " (*ABW Development*, 2022 IL App (1st) 210930, ¶ 30 (quoting *Eljer*, 197 Ill. 2d at 301)) and by instead drawing analogy between SARS-CoV-2 and asbestos fiber contamination, which our supreme court has recognized as constituting property damage for insurance purposes. See *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 75-76 (1991) (quoting *Board of Education of City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 446-49 (1989)); accord *Board of Education of Township High School District No. 211 v. International Insurance Co.*, 308 Ill. App. 3d 597, 602 (1999) (asbestos fiber contamination meets definition of "physical loss or damage" to property). The plaintiff traces an extensive history of how, in its view, our prior decisions inappropriately began employing the definition of "physical" injury from *Eljer* in the

context of COVID-19 coverage cases despite asbestos fiber contamination cases being "a directly analogous line of Illinois Supreme Court decisions on point which support a finding in [the plaintiff's] favor on this issue." It urges us to remedy this misapplication of the law by declining to follow the wrongfully-decided cases and instead to extend the holding of asbestos fiber contamination cases to the context of COVID-19.

¶ 23    This argument is one that, in various forms, this court has considered and rejected multiple times. In *Sweet Berry Café*, the court found that cases holding that asbestos fiber contamination could constitute physical loss or damage were distinguishable because such contamination rendered the premises unusable, whereas the virus that causes COVID-19 does not. *Sweet Berry Café*, 2022 IL App (2d) 210088, ¶ 43. Since then, this court has rejected numerous arguments either that *Eljer*'s definition of "physical" was being misapplied in this context or that asbestos fiber contamination cases provided a more appropriate analogy. See *e.g.*, *Oak Park Prosthodontics*, 2023 IL App (1st) 220563-U, ¶¶ 2, 22, 36; *Stats LLC*, 2023 IL App (1st) 220936-U, ¶ 39; *Bottleneck Management*, 2022 IL App (1st) 211462-U, ¶ 30; *Ark Restaurants Corp. v. Zurich American Insurance Co.*, 2022 IL App (1st) 211147-U, ¶ 28. *State & 9 Street Corp. v. Society Insurance*, 2022 IL App (1st) 211222-U, ¶¶ 27, 37-39. We adhere to the result reached in these decisions and reject the plaintiff's argument that we should reconsider this issue yet again.

¶ 24    Finally, the plaintiff contends that the trial court erred by dismissing the case against Westport based on the following provision contained in "Endorsement No. 9" to the plaintiff's policy with Westport:

"The following wording is added to the policy:

Governing Law and Jurisdiction

1. The laws of the State of New York in United States, without regard to its conflict

of law rules, that would cause the application of the laws of any other jurisdiction, shall govern the construction and interpretation of this POLICY.

2. The parties hereto do irrevocably submit to the exclusive jurisdiction of the Courts of the State of New York in United States, and to the extent permitted by law, the parties expressly waive all rights to challenge or otherwise limit such jurisdiction."

The plaintiff argues that Illinois is a proper forum in which it may bring suit against Westport, based on the following provision of section I of the main body of that policy:

"JURISDICTION AND SUIT

It is hereby understood and agreed that:

A. In the event of the failure of the Insurer to pay an amount claimed to be due hereunder, at the direction of the Insured, the Insurer will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such jurisdiction. All matters arising hereunder shall be determined in accordance with the law and practice of such court."

¶ 25    The plaintiff acknowledges the rule that a policy must be interpreted in conjunction with all endorsements to determine the meaning and effect of the insurance contract, and the terms of an endorsement control in the event of a conflict. *Pekin Insurance Co. v. Recurrent Training Center, Inc.*, 409 Ill. App. 3d 114, 118 (2011). The plaintiff argues, however, that no irreconcilable conflict exists between the above provisions. It points out that Endorsement No. 9 sets forth various clauses, some of which specify that they are amending existing provisions, adding to existing provisions, or deleting and replacing clauses in the policy's main body; however, Endorsement No. 9 does not state that the "JURISDICTION AND SUIT" provision is deleted from the main body and replaced with the "Governing Law and Jurisdiction" provision. The plaintiff further cites

the signature page of section I of the main body, which provides that it is "understood and agreed that the policies and endorsements issued by the Insurer will conform to the terms and conditions of this Contract of Insurance." The plaintiff argues that any conflict may be reconciled by "following the instructions on the signature page, which means we must conform Endorsement No. 9 to the policy and the 'JURISDICTION AND SUIT' provision controls."

¶ 26     By contrast, the defendants argue that the two provisions do conflict, because the "JURISDICTION AND SUIT" provision in the main body of the policy allows the insured to bring suit in the courts of any state with jurisdiction, whereas the "Governing Law and Jurisdiction" provision of the endorsement provides that the parties irrevocably submit to the exclusive jurisdiction of the courts of New York and waive all rights to challenge or limit their jurisdiction. The defendants further assert that the plaintiff is a sophisticated insured who actively participated in negotiating and promulgating the terms of this policy and its endorsements, and it is bound by the endorsement's terms for this additional reason.

¶ 27     We agree with the defendants that a clear conflict exists between these two provisions and find the plaintiff's efforts to reconcile them to be strained. Accordingly, the provisions of the endorsement must control. *Pekin Insurance Co.*, 409 Ill. App. 3d at 118. Pursuant to the "Governing Law and Jurisdiction" provision of the endorsement, exclusive jurisdiction over this matter is vested in courts of New York, not Illinois. The trial court's granting of Westport's motion to dismiss on this basis was proper.

¶ 28                                   III. CONCLUSION

¶ 29     For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 30     Affirmed.